**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| **MICHAEL STELLATO AS PERSONAL REPRESENTATIVE OF THE ESTATE OF WENDY STELLATO,** ) ) ) ) | **Case No.:** |
| **Plaintiff,** ) ) | |
| **v.** ) ) | |
| **MEDTRONIC, INC.; MEDTRONIC MINIMED, INC.; MINIMED DISTRIBUTION CORP.; MEDTRONIC USA, INC.; MEDTRONIC, PLC; CONVATEC, INC.; UNOMEDICAL, INC.; UNOMEDICAL DEVICES SA de CV; and UNOMEDICAL A/S,** ) ) ) ) ) ) ) ) | |
| **Defendants.** ) ) | |
| _____/ | |

## COMPLAINT AND JURY TRIAL DEMANDED

Plaintiff, MICHAEL STELLATO as Personal Representative of the Estate of WENDY STELLATO, hereinafter ("Plaintiff") by and through the undersigned counsel, brings this Complaint against Defendants, MEDTRONIC, INC., MEDTRONIC MINIMED, INC., MINIMED DISTRIBUTION CORP., MEDTRONIC USA, INC., MEDTRONIC, PLC, CONVATEC, INC., UNOMEDICAL, INC., UNOMEDICAL DEVICES SA de CV, and UNOMEDICAL A/S. As grounds thereof, Plaintiff states:

### JURISDICTION AND VENUE

1.     This is an action for damages in excess of Seventy Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and attorney's fees, thus vesting this Court with jurisdiction under 28 U.S.C. §1332. Additionally, venue is proper pursuant to 28 U.S.C. §1391.

2.      At all times material hereto, the decedent, Wendy Stellato, was a citizen of the State of Florida and a resident of Orange County, Florida.

3.      Wendy Stellato died on November 18, 2017, at the age of 54, and was survived by her husband, Michael Stellato, who has also been named the Personal Representative of her Estate. A copy of the Letters of Administration are attached hereto as **Exhibit A.**

4.      At all times material hereto, Michael Stellato, is and was a citizen of the State of Florida and a resident of Orange County, Florida.

5.      At all times material hereto, Defendant, MEDTRONIC, INC., was and is a Foreign For-Profit Corporation (incorporated in Minnesota) which, at all times relevant to this lawsuit, was authorized to do business in the State of Florida, and which operated, conducted, engaged in, and/or carried on a business or business venture throughout the State of Florida for which it received substantial revenue. MEDTRONIC, INC., has designated Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301, as its registered agent for service of process.

6.      Defendant, MEDTRONIC, INC., submitted itself to the jurisdiction of this Honorable Court by doing personally or through its agents, at all times material to this cause of action, the following acts:

(a) Conducting and engaging in substantial business and other activities in Florida by selling and/or delivering defective infusion sets, including the Subject Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, to persons, firms, or corporations in this state via its subsidiaries, shareholders, distributors, dealers, wholesalers, and brokers. Such products were used by consumers in Florida in the ordinary course of commerce and trade;

(b) Committing a tortious act within this state by selling and delivering infusion sets, including the Subject Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, to persons, firms, or corporations in this state via its subsidiaries, shareholders, distributors, dealers, wholesalers, and brokers. Such products were used by consumers in Florida in the ordinary course of commerce and trade;

(c) Causing injury to persons in Florida, including decedent, Wendy Stellato. At or about the time said injuries occurred, Defendant engaged in solicitation activities in Florida to promote the sale, consumption, use of its products and such products were consumed within Florida in the ordinary course of commerce, and Defendant was engaged in substantial and not isolated activity within this state; and

(d) Selling and delivering defective infusion sets to persons, firms, or corporations via its subsidiaries, shareholders, distributors, dealers, wholesalers, and brokers, with knowledge or reason to foresee that they would be shipped in interstate commerce and would reach the market of Florida users or consumers.

7.      At all times material hereto, Defendant, MEDTRONIC MINIMED, INC., was and is a Foreign Corporation (incorporated in Delaware) which was doing business throughout the State of Florida for which it received substantial revenue. Its principal place of business is located at 18000 Devonshire Street, Northridge, California 91325.

8.      Defendant, MEDTRONIC MINIMED, INC., submitted itself to the jurisdiction of this Honorable Court by, doing personally or through its agents, at all times material to this cause of action, the following acts:

(a) Conducting and engaging in substantial business and other activities in Florida by selling and/or delivering defective infusion sets, including the Subject Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, to persons, firms, or corporations in this state via its subsidiaries, shareholders, distributors, dealers, wholesalers, and brokers. Such products were used by consumers in Florida in the ordinary course of commerce and trade;

(b) Committing a tortious act within this state by selling and delivering infusion sets, including the Subject Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, to persons, firms, or corporations in this state via its subsidiaries, shareholders, distributors, dealers, wholesalers, and brokers. Such products were used by consumers in Florida in the ordinary course of commerce and trade;

(c) Causing injury to persons in Florida, including decedent, Wendy Stellato. At or about the time said injuries occurred, Defendant engaged in solicitation activities in Florida to promote the sale, consumption, use of its products and such products were consumed within Florida in the ordinary course of commerce, and Defendant was engaged in substantial and not isolated activity within this state; and

(d) Selling and delivering defective infusion sets to persons, firms, or corporations via its subsidiaries, shareholders, distributors, dealers, wholesalers, and brokers, with knowledge or reason to foresee that they would be shipped in interstate commerce and would reach the market of Florida users or consumers.

9. At all times material hereto, Defendant, MINIMED DISTRIBUTION CORP., was and is a Foreign Corporation (incorporated in Delaware) which, at all times relevant to this lawsuit, was authorized to do business in the State of Florida, and which operated, conducted, engaged in, and/or carried on a business or business venture throughout the State of Florida for which it received substantial revenue. MINIMED DISTRIBUTION CORP., has designated Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301, as its registered agent for service of process.

10. Defendant, MINIMED DISTRIBUTION CORP., submitted itself to the jurisdiction of this Honorable Court by, doing personally or through its agents, at all times material to this cause of action, the following acts:

(a) Conducting and engaging in substantial business and other activities in Florida by selling and/or delivering defective infusion sets, including the Subject Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, to persons, firms, or corporations in this state via its subsidiaries, shareholders, distributors, dealers, wholesalers, and brokers. Such products were used by consumers in Florida in the ordinary course of commerce and trade;

(b) Committing a tortious act within this state by selling and delivering infusion sets, including the Subject Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, to persons, firms, or corporations in this state via its subsidiaries, shareholders, distributors, dealers, wholesalers, and brokers. Such products were used by consumers in Florida in the ordinary course of commerce and trade;

(c) Causing injury to persons in Florida, including decedent, Wendy Stellato. At or about the time said injuries occurred, Defendant engaged in solicitation activities in Florida to promote the sale, consumption, use of its products and such products were consumed within Florida in the ordinary course of commerce, and Defendant was engaged in substantial and not isolated activity within this state; and

(d) Selling and delivering defective infusion sets to persons, firms, or corporations via its subsidiaries, shareholders, distributors, dealers, wholesalers, and brokers, with knowledge or reason to foresee that they would be shipped in interstate commerce and would reach the market of Florida users or consumers.

11.    At all times material hereto, Defendant, MEDTRONIC USA, INC., was and is a Foreign Profit Corporation (incorporated in Minnesota) which, at all times relevant to this lawsuit, was licensed to do business in the State of Florida, and which operated, conducted, engaged in, and/or carried on a business or business venture in Orange County, Florida. MEDTRONIC USA, INC., has designated Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301, as its registered agent for service of process.

12.    Defendant, MEDTRONIC USA, INC., submitted itself to the jurisdiction of this Honorable Court by, doing personally or through its agents, at all times material to this cause of action, the following acts:

(a) Conducting and engaging in substantial business and other activities in Florida by selling and/or delivering defective infusion sets, including the Subject Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, to persons, firms, or corporations in this state via its subsidiaries, shareholders, distributors, dealers, wholesalers, and brokers. Such products were used by consumers in Florida in the ordinary course of commerce and trade;

(b) Committing a tortious act within this state by selling and delivering infusion sets, including the Subject Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, to persons, firms, or corporations in this state via its subsidiaries, shareholders, distributors, dealers, wholesalers, and brokers. Such products were used by consumers in Florida in the ordinary course of commerce and trade;

(c) Causing injury to persons in Florida, including decedent, Wendy Stellato. At or about the time said injuries occurred, Defendant engaged in solicitation activities in Florida to promote the sale, consumption, use of its products and such products were consumed within Florida in the ordinary course of commerce, and Defendant was engaged in substantial and not isolated activity within this state; and

> (d) Selling and delivering defective infusion sets to persons, firms, or corporations via its subsidiaries, shareholders, distributors, dealers, wholesalers, and brokers, with knowledge or reason to foresee that they would be shipped in interstate commerce and would reach the market of Florida users or consumers.

13.    At all times material hereto, Defendant, MEDTRONIC, PLC,[1] was and is the ultimate parent company of the foregoing Medtronic Defendants identified in ¶5-12. MEDTRONIC, PLC, is a publicly traded company with its legal headquarters in Ireland. The executive headquarters is located in Minnesota. Directly and indirectly through its agent (and wholly owned subsidiaries identified in ¶5-12, above) it conducts business throughout the State of Florida for which it receives substantial revenue. MEDTRONIC, PLC and MEDTRONIC, INC. are so closely related that MEDTRONIC, INC. is MEDTRONIC, PLC's agent for service of process as a matter of law, pursuant to *Lamb v. Volkswagenwerk Aktiengesellschaft*, 104 F.R.D. 95 (S.D. Fla. 1985).

14.    Defendant, MEDTRONIC, PLC, submitted itself to the jurisdiction of this Honorable Court by, doing personally or through its agents, at all times material to this cause of action, the following acts:

> (e) Conducting and engaging in substantial business and other activities in Florida by selling and/or delivering defective infusion sets, including the Subject Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, to persons, firms, or corporations in this state via its subsidiaries, shareholders, distributors, dealers, wholesalers, and brokers. Such products were used by consumers in Florida in the ordinary course of commerce and trade;

> (f) Committing a tortious act within this state by selling and delivering infusion sets, including the Subject Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, to persons, firms, or corporations in this state via its subsidiaries, shareholders, distributors, dealers, wholesalers, and brokers. Such products were used by consumers in Florida in the ordinary course of commerce and trade;

---

[1] Defendants, Medtronic, Inc., Medtronic MiniMed, Inc., MiniMed Distribution Corp, Medtronic USA, Inc., And Medtronic, PLC, will be referred to collectively as "MEDTRONIC" and/or "the MEDTRONIC defendants"

(g) Causing injury to persons in Florida, including decedent, Wendy Stellato. At or about the time said injuries occurred, Defendant engaged in solicitation activities in Florida to promote the sale, consumption, use of its products and such products were consumed within Florida in the ordinary course of commerce, and Defendant was engaged in substantial and not isolated activity within this state; and

(h) Selling and delivering defective infusion sets to persons, firms, or corporations via its subsidiaries, shareholders, distributors, dealers, wholesalers, and brokers, with knowledge or reason to foresee that they would be shipped in interstate commerce and would reach the market of Florida users or consumers.

15.    At all times material hereto, Defendant, CONVATEC, INC., was and is a Foreign Profit Corporation (incorporated in Delaware) which, at all times relevant to this lawsuit, was authorized to do business in the State of Florida, and which operated, conducted, engaged in, and/or carried on a business or business venture throughout the State of Florida for which it received substantial revenue. CONVATEC, INC., has designated CT Corporation System, 1200 South Plantation Street, Plantation, Florida 33324, as its registered agent for service of process.

16.    Defendant, CONVATEC, INC., submitted itself to the jurisdiction of this Honorable Court by, doing personally or through its agents, at all times material to this cause of action, the following acts:

(a) Conducting and engaging in substantial business and other activities in Florida by selling and/or delivering defective infusion sets, including the Subject Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, to persons, firms, or corporations in this state via its subsidiaries, shareholders, distributors, dealers, wholesalers, and brokers. Such products were used by consumers in Florida in the ordinary course of commerce and trade;

(b) Committing a tortious act within this state by selling and delivering infusion sets, including the Subject Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, to persons, firms, or corporations in this state via its subsidiaries, shareholders, distributors, dealers, wholesalers, and brokers. Such products were used by consumers in Florida in the ordinary course of commerce and trade;

(c) Causing injury to persons in Florida, including decedent, Wendy Stellato. At or about the time said injuries occurred, Defendant engaged in solicitation

activities in Florida to promote the sale, consumption, use of its products and such products were consumed within Florida in the ordinary course of commerce, and Defendant was engaged in substantial and not isolated activity within this state; and

(d) Selling and delivering defective infusion sets to persons, firms, or corporations via its subsidiaries, shareholders, distributors, dealers, wholesalers, and brokers, with knowledge or reason to foresee that they would be shipped in interstate commerce and would reach the market of Florida users or consumers.

17.    At all times material hereto, Defendant, UNOMEDICAL, INC., was and is a Foreign Corporation (incorporated in Delaware) with its principal place of business located at 5701 South Ware Road Ste.1, McAllen, TX 78503. Upon information and belief, UNOMEDICAL, INC., is a wholly owned subsidiary of UNOMEDICAL A/S.

18.    Defendant, UNOMEDICAL, INC., submitted itself to the jurisdiction of this Honorable Court by, doing personally or through its agents, at all times material to this cause of action, the following acts:

(a) Conducting and engaging in substantial business and other activities in Florida by selling and/or delivering defective infusion sets, including the Subject Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, to persons, firms, or corporations in this state via its subsidiaries, shareholders, distributors, dealers, wholesalers, and brokers. Such products were used by consumers in Florida in the ordinary course of commerce and trade;

(b) Committing a tortious act within this state by selling and delivering infusion sets, including the Subject Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, to persons, firms, or corporations in this state via its subsidiaries, shareholders, distributors, dealers, wholesalers, and brokers. Such products were used by consumers in Florida in the ordinary course of commerce and trade;

(c) Causing injury to persons in Florida, including decedent, Wendy Stellato. At or about the time said injuries occurred, Defendant engaged in solicitation activities in Florida to promote the sale, consumption, use of its products and such products were consumed within Florida in the ordinary course of commerce, and Defendant was engaged in substantial and not isolated activity within this state; and

(d) Selling and delivering defective infusion sets to persons, firms, or corporations via its subsidiaries, shareholders, distributors, dealers, wholesalers, and brokers, with knowledge or reason to foresee that they would be shipped in interstate commerce and would reach the market of Florida users or consumers.

19.     At all times material hereto, Defendant, UNOMEDICAL DEVICES SA de CV was and is a Foreign Corporation with its principal place of business in Reynosa, Mexico. Upon information and belief, UNOMEDICAL, DEVICES SA de CV., is a wholly owned subsidiary of UNOMEDICAL A/S.

20.     Defendant, UNOMEDICAL DEVICES SA de CV, submitted itself to the jurisdiction of this Honorable Court by, doing personally or through its agents, at all times material to this cause of action, the following acts:

(a) Conducting and engaging in substantial business and other activities in Florida by selling and/or delivering defective infusion sets, including the Subject Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, to persons, firms, or corporations in this state via its subsidiaries, shareholders, distributors, dealers, wholesalers, and brokers. Such products were used by consumers in Florida in the ordinary course of commerce and trade;

(b) Committing a tortious act within this state by selling and delivering infusion sets, including the Subject Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, to persons, firms, or corporations in this state via its subsidiaries, shareholders, distributors, dealers, wholesalers, and brokers. Such products were used by consumers in Florida in the ordinary course of commerce and trade;

(c) Causing injury to persons in Florida, including decedent, Wendy Stellato. At or about the time said injuries occurred, Defendant engaged in solicitation activities in Florida to promote the sale, consumption, use of its products and such products were consumed within Florida in the ordinary course of commerce, and Defendant was engaged in substantial and not isolated activity within this state; and

(d) Selling and delivering defective infusion sets to persons, firms, or corporations via its subsidiaries, shareholders, distributors, dealers, wholesalers, and brokers, with knowledge or reason to foresee that they would be shipped in interstate commerce and would reach the market of Florida users or consumers.

21.     At all times material hereto, Defendant, UNOMEDICAL A/S,[2] was and is a Foreign Corporation with its principal place of business in Denmark. UNOMEDICAL A/S and UNOMEDICAL, INC. are so closely related that UNOMEDICAL, INC. is UNOMEDICAL A/S's agent for service of process as a matter of law, pursuant to *Lamb v. Volkswagenwerk Aktiengesellschaft*, 104 F.R.D. 95 (S.D. Fla. 1985).

22.     Defendant, UNOMEDICAL A/S, submitted itself to the jurisdiction of this Honorable Court by, doing personally or through its agents, at all times material to this cause of action, the following acts:

(a)  Conducting and engaging in substantial business and other activities in Florida by selling and/or delivering defective infusion sets, including the Subject Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, to persons, firms, or corporations in this state via its subsidiaries, shareholders, distributors, dealers, wholesalers, and brokers. Such products were used by consumers in Florida in the ordinary course of commerce and trade;

(b)  Committing a tortious act within this state by selling and delivering infusion sets, including the Subject Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, to persons, firms, or corporations in this state via its subsidiaries, shareholders, distributors, dealers, wholesalers, and brokers. Such products were used by consumers in Florida in the ordinary course of commerce and trade;

(c)  Causing injury to persons in Florida, including decedent, Wendy Stellato. At or about the time said injuries occurred, Defendant engaged in solicitation activities in Florida to promote the sale, consumption, use of its products and such products were consumed within Florida in the ordinary course of commerce, and Defendant was engaged in substantial and not isolated activity within this state; and

(d)  Selling and delivering defective infusion sets to persons, firms, or corporations via its subsidiaries, shareholders, distributors, dealers, wholesalers, and brokers, with knowledge or reason to foresee that they would be shipped in interstate commerce and would reach the market of Florida users or consumers.

---

[2] Defendants, ConvaTec, Inc., Unomedical, Inc., Unomedical Devices SA de CV, and Unomedical A/S, will be referred to collectively as "UNOMEDICAL" and/or "the UNOMEDICAL defendants".

23.     The events, acts, errors, and/or omissions, which are the subject matter of this Complaint, occurred in Orange County, Florida.

### STATEMENT OF FACTS

24.     Type 1 diabetes is typically diagnosed in children and young adults and was previously known as juvenile diabetes. In Type 1 diabetes, the body does not produce insulin. Insulin is a hormone produced by the pancreas that converts sugar and starch from food into the energy needed to live.

25.     On November 17, 2017, Wendy Stellato was a Type 1 diabetic when she suffered a severe hypoglycemic episode resulting in her immediate and untimely death.

26.     Because of her diabetic condition, Wendy Stellato managed her diabetes through the use of insulin pump therapy, specifically, by using the Medtronic MiniMed 530G MMT-751 Insulin Pump and Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, to deliver the necessary amount of insulin into her blood stream to properly treat her diabetes. When functioning properly, these devices and their components mimic the ways a healthy pancreas works by delivering continuous and controlled doses of rapid-acting insulin, 24 hours a day, to match the user's body's needs.

27.     Since September 2016, Wendy Stellato used the MiniMed 530G MMT-751 Insulin Pump with the MiniMed MMT-397 Quick-Set Paradigm Infusion Sets until the time of her severe hypoglycemic episode that resulted in her death on November 17, 2017.

28.     On Friday, November 17, 2017, at or around 2:30 P.M., Wendy Stellato left work for the day and headed home to 3424 Cimarron Drive, Orlando, Florida, 32829, where she resided with her husband, Michael Stellato, for the past 20 years.

29.     At that time, Wendy was employed with the Golf Channel, located at 7580 Golf

Channel Drive, Orlando, Florida 32819, and had worked there for approximately 10 years and had been taking the same route home from work every day for the past 10 years. That route was taking East SR-528 in Orlando, Florida, taking Exit 13 for Narcoossee Road/SR-15, and finally making a left turn onto SR-15/North Narcoossee Road before turning onto South Chickasaw Trail, the main road leading to her home.

30.     On the afternoon of November 17, 2017, Wendy suffered a severe hypoglycemic event caused by an overdose of insulin received by the MiniMed 530G MMT-751 Insulin Pump with the MiniMed MMT-397 Quick-Set Paradigm Infusion Set that was attached to her abdomen.

31.     Wendy left work shortly after 2:30 P.M. on November 17, 2017. She took the same route home she had been taking for the past 10 years, except, on this day, instead of getting off at Exit 13 and making a left turn to go home, Wendy continued straight for a few miles before making a right turn off SR-528 and travelling to the end of an unfamiliar isolated dirt road surrounded by trees.

32.     At 3:07 P.M., Wendy texted her husband, Michael Stellato, that her car was stuck in the dirt. Wendy's husband called her at 3:07 P.M. to find out where she was, however, while on the phone Wendy continued to repeatedly state "car stuck" and "dirt road". At 3:11 P.M. and 3:15 P.M., Wendy's husband called her back but she was still unable to provide him with her location and continued to state that she did not know where she was but was near SR-528. At 3:37 P.M., while Michael Stellato drove towards SR-528, Wendy advised him that she was near Boggy Creek Road and was attempting to walk back towards the road in the direction she originally drove prior to getting her vehicle stuck in the sand. During these calls, Wendy continued to sound severely disoriented—similar to when her blood sugar levels dropped—and

symptoms of hypoglycemia worsened as minutes passed and Wendy was nowhere to be found.

33.    Several calls later, Wendy was still unable to tell her husband where she was. On the last call with her husband at or around 4:41 P.M., Wendy repeatedly stated she was getting scared because it was getting dark. Wendy's husband told her to call 911 as he was doing the same. After this last call, Wendy's husband was still unable to locate her and Wendy was no longer answering her phone.

34.    At or around 7:08 P.M., in his attempts to find his wife, Michael Stellato started driving home to find his wife and as he began to travel east on Dowden Road in Orlando, the 911 operator advised him that Dowden Road turned into a dirt road. Michael travelled to the end of the Dowden Road where he found Wendy's car, stuck in the sand on a construction road, but no Wendy in sight. Michael began calling neighbors, close friends, family, and work colleagues, but none had heard from Wendy.

35.    At or around 1:42 A.M. on November 18, 2017, Wendy's work cell phone was pinged. Law enforcement discovered Wendy approximately two (2) miles northwest of the location of her vehicle; shoeprints lead east then north for approximately a mile and a half from her vehicle to where Wendy was found.

36.    Wendy was found on a gravel road flat on her back, with her head facing south, clutching her purse in her left hand—her body position was consistent with a person losing consciousness and falling backwards. Wendy was found with her MiniMed 530G Insulin Pump and Quick-Set Paradigm Infusion set attached to her body. Time of death was called at approximately 1:42 A.M., on November 18, 2017.

37.    The Medtronic MiniMed Quick-Set Paradigm Infusion Set at issue malfunctioned as a result of a defect that caused fluid to block the infusion set membrane during

the priming/fill-tubing process, which prevents the infusion set from working properly and results in undetected and uncontrolled over-delivery of insulin—unbeknownst to the user.

38.    The Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set at issue was part of a Lot of infusion sets that the FDA issued a Class 2 Device Recall for on November 18, 2017.

39.    The collective Defendants, along with their agents and employees, negligently caused the defective infusion sets to be designed, manufactured, assembled, distributed, and sold to members of the public and they further negligently failed to remove the recalled infusion sets from the marketplace and stream of commerce after they had knowledge of the defects as well as the recall.

40.    On November 18, 2017, hours after being told that Wendy, his wife of 18 years had died, Michael Stellato received a letter in the mail dated November 13, 2017, from Medtronic, advising of an "URGENT MEDICAL DEVICE RECALL" for the Paradigm Infusion Set at issue. Michael and Wendy Stellato received no other notification from Defendants by mail, e-mail, telephone call, or any other communication prior to that time.

## THE PRODUCT: THE PARADIGM INFUSION SET

### I.    *How the Paradigm Infusion Set Works*

41.    The infusion set at issue is the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set (hereinafter "the Paradigm Infusion Set").

42.    As stated above, Wendy Stellato managed her diabetes through the use of insulin pump therapy with the Medtronic MiniMed 530G MMT-751 Insulin Pump (hereinafter "the MMT-751 Pump") in conjunction with the Paradigm Infusion Set. This insulin pump therapy is comprised of:

a. **MMT-751 Pump**: A small durable medical device that delivers insulin and includes a reservoir compartment. The pump contains a mini computer and motor that controls the movement of a piston, located at the bottom of the reservoir compartment. The piston acts like a plunger rod on a syringe and precisely controls the delivery of basal and bolus insulin. Each time the pump delivers insulin, the piston moves forward and pushes up on the bottom of the reservoir to deliver the exact amount of insulin programmed.

b. **MMT-332A Reservoir:** The 3.0mL cylindrical reservoir is a disposable plastic cartridge that holds up to 300 units of insulin (or a 2-3 day supply). The reservoir fits into the pump's reservoir compartment. The reservoir comes with a transfer guard (blue piece at the top that is removed before inserting the reservoir into the pump) that assists with pulling the insulin from a vial into the reservoir.

c. **MMT-397 Paradigm Infusion Set:** The Paradigm Infusion Set consists of a thin plastic tube that transports insulin from the pump's reservoir to the user's body. One end of the tubing is the tubing connector called a "P-Cap" which connects the Paradigm Infusion Set to the reservoir in the pump and on the other end is a thin plastic tube (cannula) that goes into the skin. The Paradigm Infusion Set is changed every two to three days with the reservoir.

d. **Infusion Set Insertion Device**: An infusion set is placed into the insertion device and with a push of a button the infusion set is inserted quickly.

43.     To successfully deliver insulin to the user, the MMT-751 Pump must be used with a Medtronic Infusion Set that connects to the user's abdomen and acts as a conduit to provide subcutaneous insulin. The user fills the Paradigm reservoir, which is then attached by the user to the Paradigm Infusion Set via the P-Cap tubing connector. The reservoir with the P-Cap is inserted by the user into the reservoir compartment of the MMT-751 Pump. A user must be connected to both the pump and infusion set to receive insulin. The plunger in the MMT-751 Pump forces insulin from the reservoir through the Paradigm Infusion Set to the user.

## II.     *510(k) Clearance of the MMT-397 Paradigm Quick-Set Infusion Set*

44.     Under the Medical Device Amendments to the Food, Drug, and Cosmetic Act, the FDA is required to classify medical devices based upon potential safety and effectiveness concerns

that the agency might have about those devices. Certain devices may be sold after clearance via the Premarket Notification process, commonly referred to as the "510(k) process."

45.     The purpose of a 510(k) Premarket Notification submission (21 U.S.C. § 360(k); 21 C.F.R. § 807, Subpart E) is to demonstrate that a new device to be marketed is at least as safe and effective by proving substantial equivalence to a legally marketed device, known as a predicate device, that is not subject to Premarket Approval (PMA).[3]

46.     Substantial equivalence is established with respect to: intended use, design, energy used or delivered, materials, performance, safety, effectiveness, labeling, biocompatibility, standards, and other applicable characteristics. And so, a 510(k) submitter compares and contrasts the new device with the legally marketed device, explaining why any differences should not cause the manufacturer to be required to submit a PMA application.[4]

47.     The MMT-397 Paradigm Infusion Set at issue is a Class II medical device that was cleared for marketing by the FDA pursuant to the agency's 510(k) clearance process on August 10, 2016. Unomedical owns the 510(k) for the Paradigm Quick-Set Infusion Sets and is the entity that submits regulatory filings to the FDA related to that product, including all Medical Device Reports.

### III.    *The MMT-397 Paradigm Infusion Set at Issue*

48.     The Paradigm Infusion Set's P-Cap tubing connector component is a unique and proprietary design of Medtronic, for which Medtronic holds the patent. Since July 2007, Unomedical took over the manufacturing and assembling of the P-Cap.

---

[3] A legally marketed device is a device that was either (a) legally marketed prior to May 28, 1976, for which PMA is not required; (b) a device that has been reclassified from Class III to Class II or I; or (c) a device that has itself been found to be substantially equivalent to another device through the 510(k) process. 21 C.F.R. § 807.92(a)(3). Submitters must compare their device to one or more similar legally marketed U.S. devices and support their substantial equivalence claims

[4] *See* https://www.fda.gov/medical-devices/premarket-submissions/premarket-notification-510k#intro

49.     The remaining components of the Paradigm Infusion Set were designed, manufactured, and assembled by Unomedical. Unomedical is Medtronic's supplier of MMT-397 infusion sets, which Medtronic then markets, sells, and distributes in connection with its Paradigm Pumps.

50.     The MMT-751 Pump is designed to be waterproof. It has an IPX7 designation, meaning the device is waterproof for 30 minutes while completely submerged in water up to one (1) meter in depth. This means the external case and connection design is sealed against liquid ingress. However, the internal air space inside the pump's reservoir compartment requires to be vented to the outside at the same time so that air pressure is equal both inside and outside the pump at all times. If air pressure inside the pump's reservoir compartment exceeds the external atmospheric pressure, there is a risk (and danger) in that the resulting forces causes the reservoir piston to be driven inward and will inadvertently and uncontrollably push insulin out of the reservoir and into the patient without the pump or patient's awareness.

51.     The Paradigm Infusion Set's P-cap contains four very small one-way vent openings to provide airflow to equalize the pressure in the reservoir compartment with the surrounding atmospheric pressure.

52.     The unique P-Cap connector has a filter integrated into it that provides the function of sealing off liquid (hydrophobic) from passing into the pump, while at the same time allowing air (gas) to pass through from the pump's internal space to the outside, keeping it vented and equilibrated. Evidently, this unique filter design in the Paradigm Infusion Set at issue is not liquid tolerant on the inside. Therefore, if liquid does get on the inside surface of the Paradigm Infusion Set's P-Cap filter, the venting of air (gas) out of the pump will be prevented and there is a high risk of uncontrolled over or under insulin infusion.

#### IV. *The Relevant Recall*

53.     On September 10, 2017, Medtronic initiated a "voluntary" recall of specific lots of Medtronic MiniMed Infusion Sets. The recall was related to a certain discontinued component in these infusion sets that caused over-delivery of insulin shortly after an infusion set change. Medtronic, in its voluntary recall notice, stated that its investigation revealed that this over-delivery can be caused by fluid blocking the infusion set membrane during the priming/fill-tubing process.

54.     The combined use of the Medtronic MMT-751 insulin pump and recalled MMT-397 Paradigm Infusion Set causes uncontrolled over-delivery of insulin when the internal surface of the P-Cap filter has become exposed to liquid—even the tiniest amounts (a microliter) of liquid can cause these life threatening adverse effects.

55.     In particular when a user performs a new reservoir and infusion set change, there is **always** an opportunity that a small amount of liquid, insulin, can get deposited either on the reservoir top or P-Cap internal filter surface which interfaces with the reservoir top as it is connected. Although Medtronic User documentation shows one (1) way to avoid getting liquid on top of the reservoir, by flipping the vial over so it is upright and pulling the reservoir straight up, Medtronic and Unomedical do not advise on how to prevent the myriad ways a small deposit (a microliter) of liquid can find its way to the P-Cap and/or Reservoir interface.

56.     Notably, this September 10, 2017, voluntary recall stems from a *discontinued* component that, according to Medtronic, made its way into the batch that Wendy Stellato was using on the day she died. Medtronic and Unomedical were aware of this issue regarding the discontinued component as early as April 2017 but users, healthcare providers, and the general public were not made aware until September 2017 via a "voluntary" recall and letters sent via

regular mail – at least with urgency to Wendy Stellato, two months later.

## ALLEGATIONS COMMON TO COUNTS I-X

57.    At all times material, Wendy Stellato was the permissive and foreseeable user of the Paradigm Infusion Set.

58.    At all times material, Defendants, MEDTRONIC, INC., MEDTRONIC MINIMED, INC., MINIMED DISTRIBUTION CORP., MEDTRONIC USA, and MEDTRONIC, PLC (hereinafter collectively referred to as "MEDTRONIC"), were engaged in the business of designing, manufacturing, testing, inspecting, labeling, marketing, selling, and distributing Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Sets within the State of Florida and more specifically in Orange County, Florida.

59.    At all times material, Defendant, MEDTRONIC designed, manufactured, tested, inspected, labeled, marketed, sold, and distributed the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, within the State of Florida and more specifically in Orange County, Florida.

60.    At all times material, Defendant, MEDTRONIC, adopted a design process and a manufacturing process for the Paradigm Infusion Set, which was not common, usual, customary, prudent, or in accordance with the established industry standards relating to the design and manufacture of similar infusion sets with similar intended and/or foreseeable functions.

61.    At all times material, the Paradigm Infusion Set was designed, manufactured, tested, inspected, labeled, marketed, sold, and distributed without consideration for warnings, and mechanical component failures resulting in unintended, unexpected, undetected, and uncontrolled continuous over delivery of insulin to the user through the Paradigm Infusion Set despite it being used under intended and/or reasonably foreseeable conditions or in an intended and/or reasonably

foreseeable manner and the user being of the impression that the pump and Paradigm Infusion Set are operating normally.

62.     At all times material, Defendant, MEDTRONIC failed to perform adequate testing to determine the circumstances under which the Paradigm Infusion Set was likely to fail, function improperly, inadvertently and uncontrollably over deliver continuous doses of insulin to the user resulting in severe hypoglycemic episodes while being used under intended and/or reasonably foreseeable conditions or in an intended and/or reasonably foreseeable manner.

63.     At all times material, Defendant, MEDTRONIC designed, manufactured, tested, inspected, labeled, marketed, sold, distributed, and placed the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, into the stream of commerce intending that it be used in the precise manner that it was being used by Wendy Stellato, which proximately caused and resulted in her sudden and unexpected death.

64.     At no time material hereto was the Paradigm Infusion Set subjected to any unintended and/or unforeseeable conditions.

65.     On November 17, 2017, the Paradigm Infusion Set was in substantially the same defective condition at the time of Wendy Stellato's death, as it was when it left Defendant, MEDTRONIC's possession or control.

66.     Defendant, MEDTRONIC owed a duty to users with diabetes, a condition that if not appropriately managed may result in life-threatening, disabling, and/or dangerous complications, to use reasonable care in designing, manufacturing, testing, inspecting, labeling, marketing, selling, and distributing the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, and its components and in testing and inspecting any component parts made by

another, so that the Paradigm Infusion Set could be safely used in a manner and for a purpose for which it was made.

67.    Defendant, MEDTRONIC owed a duty to users with diabetes, to provide adequate warning(s) to intended and/or foreseeable users of the Paradigm Infusion Set, such as Wendy Stellato, on how to use, maintain, recognize and appreciate the dangers inherent within the Paradigm Infusion Set's mechanical and internal control and the inherent risk of harm and dangers associated with the reasonably foreseeable and intended use of these components.

68.    Defendant, MEDTRONIC breached such duties by designing, manufacturing, testing, inspecting, labeling, marketing, selling, distributing, and providing warnings of the danger, or lack thereof, about the Paradigm Infusion Set in such a negligent manner that it was likely to fail even while being used in an intended and/or reasonably foreseeable manner.

69.    The negligent manner in which the Paradigm Infusion Set was designed, manufactured, tested, inspected, labeled, marketed, sold, distributed, and the warnings, or lack thereof, which were given to users such as Wendy Stellato, was the proximate cause of the infusion system failure described above, which caused the Paradigm Infusion Set to uncontrollably over deliver continuous doses of insulin thereby resulting in Wendy Stellato's sudden and unexpected death.

## COUNT I– STRICT LIABILITY AGAINST MEDTRONIC, INC.

70.    Plaintiff realleges paragraphs 1—14, and 23—69, as if restated verbatim herein.

71.    MEDTRONIC, INC., placed the defective Paradigm Infusion Set into the stream of commerce in Florida with knowledge that it would be used without inspection for defects or unknown dangers.

72.     MEDTRONIC, INC., knew or should have known and appreciated that ultimate users, operators, or consumers would not and could not properly inspect this product for defects and dangerous conditions and that the detection of such defects or dangers would be beyond the capabilities of such ordinary persons.

73.     The Paradigm Infusion Set was defective and unreasonably dangerous to ultimate users, consumers, or operators, including Wendy Stellato, at the time it was, designed, manufactured, tested, inspected, labeled, marketed, sold, and distributed by MEDTRONIC, INC., due to one or more of the following:

a.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a defective manner that the Paradigm Infusion Set was to likely to fail even while being used in an intended and/or reasonably foreseeable manner;

b.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it contained design defect(s) which were unreasonably dangerous to ultimate users, such as Wendy Stellato, who was an intended and/or reasonably foreseeable user;

c.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it did not have adequate safety components, warnings, or alerts to the user to prevent severe injury and death due to the defective condition of the Paradigm Infusion Set;

d.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it was capable of unexpectedly failing unbeknownst to the user;

e.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed with component pieces that were not safe and unreasonably dangerous for inclusion in or on the Paradigm Infusion Set;

f.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it failed to warn ultimate users, consumers, or operators, including Wendy Stellato, of the inherent danger and risk of harm associated with the Paradigm Infusion Set unexpectedly failing;

g. When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that the Paradigm Infusion Set failed to perform as safely as an ordinary consumer and/or user would expect when utilizing the Paradigm Infusion Set in an intended and/or reasonably foreseeable manner;

h. When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that caused the Paradigm Infusion Set to unexpectedly, inadvertently, uncontrollably over deliver continuous doses of insulin causing a severe hypoglycemic episode that resulted in the sudden and unexpected death of Wendy Stellato;

i. When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that the Paradigm Infusion Set lacked and/or contained defective warnings which rendered the Paradigm Infusion Set unreasonably and unforeseeably dangerous to persons such as Wendy Stellato, who was an intended and/or foreseeable user of the Paradigm Infusion Set; and

j. When placed in the stream of commerce, the Paradigm Infusion Set did not have any adequate warnings of the inherent dangers and risk of harm associated with the Paradigm Infusion Set and the inherent dangers risk of harm associated with the reasonably foreseeable and intended use of the Paradigm Infusion Set.

74. For the reasons set forth above, the Paradigm Infusion Set was grossly and unreasonably dangerous to foreseeable users at the time MEDTRONIC, INC., released it into the stream of commerce, including Wendy Stellato, an intended user, who used the Paradigm Infusion Set in an ordinary and foreseeable manner.

75. The defects described above directly and proximately caused Wendy Stellato's sudden and unexpected death in that they directly, and in a natural and continuous sequence, produced or contributed to her death.

76. As a direct and proximate result of the foregoing, the Estate of WENDY STELLATO has incurred damages for loss of net accumulations and funeral expenses. Further, as a direct and proximate result of the foregoing, MICHAEL STELLATO, as surviving spouse, has

sustained damages for loss of companionship and protection, mental pain and suffering in the past and future, and loss of support and services in the past and future.

**WHEREFORE**, Plaintiff, demands judgment against Defendant, MEDTRONIC, INC., for damages, costs, interest, and such other relief as this Court deems just, and further demands a trial by jury on all issues triable as a matter of right.

## COUNT II– NEGLIGENCE AGAINST MEDTRONIC, INC.

77.     Plaintiff realleges paragraphs 1—14, and 23—69, as if restated verbatim herein.

78.     MEDTRONIC, INC., designed, manufactured, tested, inspected, labeled, marketed, sold, and distributed the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set.

79.     In designing, manufacturing, testing, inspecting, labeling, marketing, selling, and distributing the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, and its components, Defendant, MEDTRONIC, INC., had a duty to users, consumers, and operators to provide products that are safe for their intended and foreseeable uses. Defendant, MEDTRONIC, INC., owed a duty to users with diabetes, a condition that if not appropriately managed may result in life-threatening, disabling, and/or dangerous complications, to use reasonable care in designing, manufacturing, testing, inspecting, labeling, marketing, selling, and distributing the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, and its components and in testing and inspecting any component parts made by another, so that the Paradigm Infusion Set could be safely used in a manner and for a purpose for which it was made.

80.     MEDTRONIC, INC., was under a duty to provide proper and adequate warning(s), safety, and familiarization to intended and/or foreseeable users of the Paradigm Infusion Set, such as Wendy Stellato, on how to use, maintain, recognize and appreciate the dangers inherent within

the Paradigm Infusion Set's mechanical and internal control and the inherent risk of harm and dangers associated with the reasonably foreseeable and intended use of these components.

81.     Defendant, MEDTRONIC, INC., breached its duty of reasonable care owed to foreseeable and intended users of the Paradigm Infusion Set, including Wendy Stellato, by negligently designing, manufacturing, testing, inspecting, labeling, marketing, selling, and distributing the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, when it was not in a reasonably safe condition for foreseeable or intended use, in one or more of the following ways:

    a.  Designing a product that was unreasonably, dangerously, and inherently defective in design, warnings, and instructions;

    b.  Failing to appropriately test and inspect the Paradigm Infusion Set to ensure that it was reasonably safe and free from defects;

    c.  Failing to perform adequate testing on the Paradigm Infusion Set to determine the circumstances under which the Paradigm Infusion Set system was likely to fail, function improperly, and cause unintended, unexpected, and uncontrollable over delivery of insulin to the user of the Paradigm Infusion Set while being used under intended and/or reasonably foreseeable conditions or in an intended and/or reasonably foreseeable manner;

    d.  Designing, manufacturing, testing, inspecting, labeling, marketing, selling, distributing, and providing warnings, or lack thereof, about the Paradigm Infusion Set in such a way that it was likely to fail even while being used in an intended and/or reasonably foreseeable manner;

    e.  Failing to adequately warn foreseeable and intended users of the Paradigm Infusion Set's unintended, unexpected, and uncontrollable over delivery of insulin while being used under intended and/or reasonably foreseeable conditions or in an intended and/or reasonably foreseeable manner;

    f.  Failing to devise, implement, or instruct foreseeable and intended users on the appropriate and proper safety measures in controlling, managing, and/or preventing the Paradigm Infusion Set system's failure during unintended, unexpected, and uncontrollable over delivery of insulin while being used under intended and/or reasonably foreseeable conditions or in an intended and/or reasonably foreseeable manner;

    g.  Failing to design, manufacture, test, inspect, label, market, sell, and distribute the Paradigm Infusion Set to otherwise protect or prevent a foreseeable user from unexpectedly receiving unintended uncontrollable over delivery of insulin

from the use of the Paradigm Infusion Set during ordinary and foreseeable use; and

h. Failing to otherwise use reasonable care designing, manufacturing, testing, inspecting, labeling, marketing, selling, and distributing the Paradigm Infusion Set.

82. The negligence described above directly and proximately caused Wendy Stellato's death in that they directly, and in a natural and continuous sequence, produced or contributed to her death.

83. As a direct and proximate result of the foregoing, the Estate of WENDY STELLATO has incurred damages for loss of net accumulations and funeral expenses. Further, as a direct and proximate result of the foregoing, MICHAEL STELLATO, as surviving spouse, has sustained damages for loss of companionship and protection, mental pain and suffering in the past and future, and loss of support and services in the past and future.

**WHEREFORE,** Plaintiff, demands judgment against Defendant, MEDTRONIC, INC., for damages, costs, interest, and such other relief as this Court deems just, and further demands a trial by jury on all issues triable as a matter of right.

## COUNT III– STRICT LIABILITY AGAINST MEDTRONIC MINIMED, INC.

84. Plaintiff realleges paragraphs 1—14, and 23—69, as if restated verbatim herein.

85. MEDTRONIC MINIMED, INC., placed the defective Paradigm Infusion Set into the stream of commerce in Florida with knowledge that it would be used without inspection for defects or unknown dangers.

86. MEDTRONIC MINIMED, INC., knew or should have known and appreciated that ultimate users, operators, or consumers would not and could not properly inspect this product for defects and dangerous conditions and that the detection of such defects or dangers would be beyond the capabilities of such ordinary persons.

87.    The Paradigm Infusion Set was defective and unreasonably dangerous to ultimate users, consumers, or operators, including Wendy Stellato, at the time it was, designed, manufactured, tested, inspected, labeled, marketed, sold, and distributed by MEDTRONIC MINIMED, INC., due to one or more of the following:

a.    When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a defective manner that the Paradigm Infusion Set was to likely to fail even while being used in an intended and/or reasonably foreseeable manner;

b.    When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it contained design defect(s) which were unreasonably dangerous to ultimate users, such as Wendy Stellato, who was an intended and/or reasonably foreseeable user;

c.    When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it did not have adequate safety components, warnings, or alerts to the user to prevent severe injury and death due to the defective condition of the Paradigm Infusion Set;

d.    When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it was capable of unexpectedly failing unbeknownst to the user;

e.    When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed with component pieces that were not safe and unreasonably dangerous for inclusion in or on the Paradigm Infusion Set;

f.    When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it failed to warn ultimate users, consumers, or operators, including Wendy Stellato, of the inherent danger and risk of harm associated with the Paradigm Infusion Set unexpectedly failing;

g.    When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that the Paradigm Infusion Set failed to perform as safely as an ordinary consumer and/or user would expect when utilizing the Paradigm Infusion Set in an intended and/or reasonably foreseeable manner;

    h.    When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that caused the Paradigm Infusion Set to unexpectedly, inadvertently, uncontrollably over deliver continuous doses of insulin causing a severe hypoglycemic episode that resulted in the sudden and unexpected death of Wendy Stellato;

    i.    When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that the Paradigm Infusion Set lacked and/or contained defective warnings which rendered the Paradigm Infusion Set unreasonably and unforeseeably dangerous to persons such as Wendy Stellato, who was an intended and/or foreseeable user of the Paradigm Infusion Set; and

    j.    When placed in the stream of commerce, the Paradigm Infusion Set did not have any adequate warnings of the inherent dangers and risk of harm associated with the Paradigm Infusion Set and the inherent dangers risk of harm associated with the reasonably foreseeable and intended use of the Paradigm Infusion Set.

88.    For the reasons set forth above, the Paradigm Infusion Set was grossly and unreasonably dangerous to foreseeable users at the time MEDTRONIC MINIMED, INC., released it into the stream of commerce, including Wendy Stellato, an intended user, who used the Paradigm Infusion Set in an ordinary and foreseeable manner.

89.    The defects described above directly and proximately caused Wendy Stellato's sudden and unexpected death in that they directly, and in a natural and continuous sequence, produced or contributed to her death.

90.    As a direct and proximate result of the foregoing, the Estate of WENDY STELLATO has incurred damages for loss of net accumulations and funeral expenses. Further, as a direct and proximate result of the foregoing, MICHAEL STELLATO, as surviving spouse, has sustained damages for loss of companionship and protection, mental pain and suffering in the past and future, and loss of support and services in the past and future.

**WHEREFORE**, Plaintiff, demands judgment against Defendant, MEDTRONIC MINIMED, INC., for damages, costs, interest, and such other relief as this Court deems just, and further demands a trial by jury on all issues triable as a matter of right.

## COUNT IV– NEGLIGENCE AGAINST MEDTRONIC MINIMED, INC.

91.      Plaintiff realleges paragraphs 1—14, and 23—69, as if restated verbatim herein.

92.      MEDTRONIC MINIMED, INC., designed, manufactured, tested, inspected, labeled, marketed, sold, and distributed the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set.

93.      In designing, manufacturing, testing, inspecting, labeling, marketing, selling, and distributing the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, and its components, Defendant, MEDTRONIC MINIMED, INC., had a duty to users, consumers, and operators to provide products that are safe for their intended and foreseeable uses. Defendant, MEDTRONIC MINIMED, INC., owed a duty to users with diabetes, a condition that if not appropriately managed may result in life-threatening, disabling, and/or dangerous complications, to use reasonable care in designing, manufacturing, testing, inspecting, labeling, marketing, selling, and distributing the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, and its components and in testing and inspecting any component parts made by another, so that the Paradigm Infusion Set could be safely used in a manner and for a purpose for which it was made.

94.      MEDTRONIC MINIMED, INC., was under a duty to provide proper and adequate warning(s), safety, and familiarization to intended and/or foreseeable users of the Paradigm Infusion Set, such as Wendy Stellato, on how to use, maintain, recognize and appreciate the dangers inherent within the Paradigm Infusion Set's mechanical and internal control and the inherent risk of harm and dangers associated with the reasonably foreseeable and intended use of these components.

95.      Defendant, MEDTRONIC MINIMED, INC., breached its duty of reasonable care owed to foreseeable and intended users of the Paradigm Infusion Set, including Wendy Stellato,

by negligently designing, manufacturing, testing, inspecting, labeling, marketing, selling, and distributing the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, when it was not in a reasonably safe condition for foreseeable or intended use, in one or more of the following ways:

a. Designing a product that was unreasonably, dangerously, and inherently defective in design, warnings, and instructions;

b. Failing to appropriately test and inspect the Paradigm Infusion Set to ensure that it was reasonably safe and free from defects;

c. Failing to perform adequate testing on the Paradigm Infusion Set to determine the circumstances under which the Paradigm Infusion Set system was likely to fail, function improperly, and cause unintended, unexpected, and uncontrollable over delivery of insulin to the user of the Paradigm Infusion Set while being used under intended and/or reasonably foreseeable conditions or in an intended and/or reasonably foreseeable manner;

d. Designing, manufacturing, testing, inspecting, labeling, marketing, selling, distributing, and providing warnings, or lack thereof, about the Paradigm Infusion Set in such a way that it was likely to fail even while being used in an intended and/or reasonably foreseeable manner;

e. Failing to adequately warn foreseeable and intended users of the Paradigm Infusion Set's unintended, unexpected, and uncontrollable over delivery of insulin while being used under intended and/or reasonably foreseeable conditions or in an intended and/or reasonably foreseeable manner;

f. Failing to devise, implement, or instruct foreseeable and intended users on the appropriate and proper safety measures in controlling, managing, and/or preventing the Paradigm Infusion Set system's failure during unintended, unexpected, and uncontrollable over delivery of insulin while being used under intended and/or reasonably foreseeable conditions or in an intended and/or reasonably foreseeable manner;

g. Failing to design, manufacture, test, inspect, label, market, sell, and distribute the Paradigm Infusion Set to otherwise protect or prevent a foreseeable user from unexpectedly receiving unintended uncontrollable over delivery of insulin from the use of the Paradigm Infusion Set during ordinary and foreseeable use; and

h. Failing to otherwise use reasonable care designing, manufacturing, testing, inspecting, labeling, marketing, selling, and distributing the Paradigm Infusion Set.

96. The negligence described above directly and proximately caused Wendy Stellato's death in that they directly, and in a natural and continuous sequence, produced or contributed to her death.

97. As a direct and proximate result of the foregoing, the Estate of WENDY STELLATO has incurred damages for loss of net accumulations and funeral expenses. Further, as a direct and proximate result of the foregoing, MICHAEL STELLATO, as surviving spouse, has sustained damages for loss of companionship and protection, mental pain and suffering in the past and future, and loss of support and services in the past and future.

**WHEREFORE,** Plaintiff, demands judgment against Defendant, MEDTRONIC MINIMED, INC., for damages, costs, interest, and such other relief as this Court deems just, and further demands a trial by jury on all issues triable as a matter of right.

## COUNT V– STRICT LIABILITY AGAINST MINIMED DISTRIBUTION CORP.

98. Plaintiff realleges paragraphs 1—14, and 23—69, as if restated verbatim herein.

99. MINIMED DISTRIBUTION CORP., placed the defective Paradigm Infusion Set into the stream of commerce in Florida with knowledge that it would be used without inspection for defects or unknown dangers.

100. MINIMED DISTRIBUTION CORP., knew or should have known and appreciated that ultimate users, operators, or consumers would not and could not properly inspect this product for defects and dangerous conditions and that the detection of such defects or dangers would be beyond the capabilities of such ordinary persons.

101. The Paradigm Infusion Set was defective and unreasonably dangerous to ultimate users, consumers, or operators, including Wendy Stellato, at the time it was, designed,

manufactured, tested, inspected, labeled, marketed, sold, and distributed by MINIMED

DISTRIBUTION CORP., due to one or more of the following:

a.   When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a defective manner that the Paradigm Infusion Set was to likely to fail even while being used in an intended and/or reasonably foreseeable manner;

b.   When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it contained design defect(s) which were unreasonably dangerous to ultimate users, such as Wendy Stellato, who was an intended and/or reasonably foreseeable user;

c.   When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it did not have adequate safety components, warnings, or alerts to the user to prevent severe injury and death due to the defective condition of the Paradigm Infusion Set;

d.   When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it was capable of unexpectedly failing unbeknownst to the user;

e.   When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed with component pieces that were not safe and unreasonably dangerous for inclusion in or on the Paradigm Infusion Set;

f.   When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it failed to warn ultimate users, consumers, or operators, including Wendy Stellato, of the inherent danger and risk of harm associated with the Paradigm Infusion Set unexpectedly failing;

g.   When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that the Paradigm Infusion Set failed to perform as safely as an ordinary consumer and/or user would expect when utilizing the Paradigm Infusion Set in an intended and/or reasonably foreseeable manner;

h.   When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that caused the Paradigm Infusion Set to unexpectedly, inadvertently, uncontrollably over deliver continuous doses of

insulin causing a severe hypoglycemic episode that resulted in the sudden and unexpected death of Wendy Stellato;

i.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that the Paradigm Infusion Set lacked and/or contained defective warnings which rendered the Paradigm Infusion Set unreasonably and unforeseeably dangerous to persons such as Wendy Stellato, who was an intended and/or foreseeable user of the Paradigm Infusion Set; and

j.  When placed in the stream of commerce, the Paradigm Infusion Set did not have any adequate warnings of the inherent dangers and risk of harm associated with the Paradigm Infusion Set and the inherent dangers risk of harm associated with the reasonably foreseeable and intended use of the Paradigm Infusion Set.

102.   For the reasons set forth above, the Paradigm Infusion Set was grossly and unreasonably dangerous to foreseeable users at the time MINIMED DISTRIBUTION CORP., released it into the stream of commerce, including Wendy Stellato, an intended user, who used the Paradigm Infusion Set in an ordinary and foreseeable manner.

103.   The defects described above directly and proximately caused Wendy Stellato's sudden and unexpected death in that they directly, and in a natural and continuous sequence, produced or contributed to her death.

104.   As a direct and proximate result of the foregoing, the Estate of WENDY STELLATO has incurred damages for loss of net accumulations and funeral expenses. Further, as a direct and proximate result of the foregoing, MICHAEL STELLATO, as surviving spouse, has sustained damages for loss of companionship and protection, mental pain and suffering in the past and future, and loss of support and services in the past and future.

**WHEREFORE**, Plaintiff, demands judgment against Defendant, MINIMED DISTRIBUTION CORP., for damages, costs, interest, and such other relief as this Court deems just, and further demands a trial by jury on all issues triable as a matter of right.

## Count VI– Negligence Against Medtronic Distribution Corp.

105.     Plaintiff realleges paragraphs 1—14, and 23—69, as if restated verbatim herein.

106.     MINIMED DISTRIBUTION CORP., designed, manufactured, tested, inspected, labeled, marketed, sold, and distributed the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set.

107.     In designing, manufacturing, testing, inspecting, labeling, marketing, selling, and distributing the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, and its components, Defendant, MINIMED DISTRIBUTION CORP., had a duty to users, consumers, and operators to provide products that are safe for their intended and foreseeable uses. Defendant, MINIMED DISTRIBUTION CORP., owed a duty to users with diabetes, a condition that if not appropriately managed may result in life-threatening, disabling, and/or dangerous complications, to use reasonable care in designing, manufacturing, testing, inspecting, labeling, marketing, selling, and distributing the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, and its components and in testing and inspecting any component parts made by another, so that the Paradigm Infusion Set could be safely used in a manner and for a purpose for which it was made.

108.     MINIMED DISTRIBUTION CORP., was under a duty to provide proper and adequate warning(s), safety, and familiarization to intended and/or foreseeable users of the Paradigm Infusion Set, such as Wendy Stellato, on how to use, maintain, recognize and appreciate the dangers inherent within the Paradigm Infusion Set's mechanical and internal control and the inherent risk of harm and dangers associated with the reasonably foreseeable and intended use of these components.

109.     Defendant, MINIMED DISTRIBUTION CORP., breached its duty of reasonable care owed to foreseeable and intended users of the Paradigm Infusion Set, including Wendy

Stellato, by negligently designing, manufacturing, testing, inspecting, labeling, marketing, selling, and distributing the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, when it was not in a reasonably safe condition for foreseeable or intended use, in one or more of the following ways:

a. Designing a product that was unreasonably, dangerously, and inherently defective in design, warnings, and instructions;

b. Failing to appropriately test and inspect the Paradigm Infusion Set to ensure that it was reasonably safe and free from defects;

c. Failing to perform adequate testing on the Paradigm Infusion Set to determine the circumstances under which the Paradigm Infusion Set system was likely to fail, function improperly, and cause unintended, unexpected, and uncontrollable over delivery of insulin to the user of the Paradigm Infusion Set while being used under intended and/or reasonably foreseeable conditions or in an intended and/or reasonably foreseeable manner;

d. Designing, manufacturing, testing, inspecting, labeling, marketing, selling, distributing, and providing warnings, or lack thereof, about the Paradigm Infusion Set in such a way that it was likely to fail even while being used in an intended and/or reasonably foreseeable manner;

e. Failing to adequately warn foreseeable and intended users of the Paradigm Infusion Set's unintended, unexpected, and uncontrollable over delivery of insulin while being used under intended and/or reasonably foreseeable conditions or in an intended and/or reasonably foreseeable manner;

f. Failing to devise, implement, or instruct foreseeable and intended users on the appropriate and proper safety measures in controlling, managing, and/or preventing the Paradigm Infusion Set system's failure during unintended, unexpected, and uncontrollable over delivery of insulin while being used under intended and/or reasonably foreseeable conditions or in an intended and/or reasonably foreseeable manner;

g. Failing to design, manufacture, test, inspect, label, market, sell, and distribute the Paradigm Infusion Set to otherwise protect or prevent a foreseeable user from unexpectedly receiving unintended uncontrollable over delivery of insulin from the use of the Paradigm Infusion Set during ordinary and foreseeable use; and

h. Failing to otherwise use reasonable care designing, manufacturing, testing, inspecting, labeling, marketing, selling, and distributing the Paradigm Infusion Set.

110.    The negligence described above directly and proximately caused Wendy Stellato's death in that they directly, and in a natural and continuous sequence, produced or contributed to her death.

111.    As a direct and proximate result of the foregoing, the Estate of WENDY STELLATO has incurred damages for loss of net accumulations and funeral expenses. Further, as a direct and proximate result of the foregoing, MICHAEL STELLATO, as surviving spouse, has sustained damages for loss of companionship and protection, mental pain and suffering in the past and future, and loss of support and services in the past and future.

**WHEREFORE,** Plaintiff, demands judgment against Defendant, MINIMED DISTRIBUTION CORP., for damages, costs, interest, and such other relief as this Court deems just, and further demands a trial by jury on all issues triable as a matter of right.

## COUNT VII– STRICT LIABILITY AGAINST MEDTRONIC USA, INC.

112.    Plaintiff realleges paragraphs 1—14, and 23—69, as if restated verbatim herein.

113.    MEDTRONIC USA, INC., placed the defective Paradigm Infusion Set into the stream of commerce in Florida with knowledge that it would be used without inspection for defects or unknown dangers.

114.    MEDTRONIC USA, INC., knew or should have known and appreciated that ultimate users, operators, or consumers would not and could not properly inspect this product for defects and dangerous conditions and that the detection of such defects or dangers would be beyond the capabilities of such ordinary persons.

115.    The Paradigm Infusion Set was defective and unreasonably dangerous to ultimate users, consumers, or operators, including Wendy Stellato, at the time it was, designed,

manufactured, tested, inspected, labeled, marketed, sold, and distributed by MEDTRONIC USA, INC., due to one or more of the following:

a. When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a defective manner that the Paradigm Infusion Set was to likely to fail even while being used in an intended and/or reasonably foreseeable manner;

b. When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it contained design defect(s) which were unreasonably dangerous to ultimate users, such as Wendy Stellato, who was an intended and/or reasonably foreseeable user;

c. When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it did not have adequate safety components, warnings, or alerts to the user to prevent severe injury and death due to the defective condition of the Paradigm Infusion Set;

d. When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it was capable of unexpectedly failing unbeknownst to the user;

e. When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed with component pieces that were not safe and unreasonably dangerous for inclusion in or on the Paradigm Infusion Set;

f. When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it failed to warn ultimate users, consumers, or operators, including Wendy Stellato, of the inherent danger and risk of harm associated with the Paradigm Infusion Set unexpectedly failing;

g. When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that the Paradigm Infusion Set failed to perform as safely as an ordinary consumer and/or user would expect when utilizing the Paradigm Infusion Set in an intended and/or reasonably foreseeable manner;

h. When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that caused the Paradigm Infusion Set to unexpectedly, inadvertently, uncontrollably over deliver continuous doses of

insulin causing a severe hypoglycemic episode that resulted in the sudden and unexpected death of Wendy Stellato;

i.    When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that the Paradigm Infusion Set lacked and/or contained defective warnings which rendered the Paradigm Infusion Set unreasonably and unforeseeably dangerous to persons such as Wendy Stellato, who was an intended and/or foreseeable user of the Paradigm Infusion Set; and

j.    When placed in the stream of commerce, the Paradigm Infusion Set did not have any adequate warnings of the inherent dangers and risk of harm associated with the Paradigm Infusion Set and the inherent dangers risk of harm associated with the reasonably foreseeable and intended use of the Paradigm Infusion Set.

116.    For the reasons set forth above, the Paradigm Infusion Set was grossly and unreasonably dangerous to foreseeable users at the time MEDTRONIC USA, INC., released it into the stream of commerce, including Wendy Stellato, an intended user, who used the Paradigm Infusion Set in an ordinary and foreseeable manner.

117.    The defects described above directly and proximately caused Wendy Stellato's sudden and unexpected death in that they directly, and in a natural and continuous sequence, produced or contributed to her death.

118.    As a direct and proximate result of the foregoing, the Estate of WENDY STELLATO has incurred damages for loss of net accumulations and funeral expenses. Further, as a direct and proximate result of the foregoing, MICHAEL STELLATO, as surviving spouse, has sustained damages for loss of companionship and protection, mental pain and suffering in the past and future, and loss of support and services in the past and future.

**WHEREFORE**, Plaintiff, demands judgment against Defendant, MEDTRONIC USA, INC., for damages, costs, interest, and such other relief as this Court deems just, and further demands a trial by jury on all issues triable as a matter of right.

## <u>Count VIII– Negligence Against Medtronic USA, Inc.</u>

119.    Plaintiff realleges paragraphs 1—14, and 23—69, as if restated verbatim herein.

120.    MEDTRONIC USA, INC., designed, manufactured, tested, inspected, labeled, marketed, sold, and distributed the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set.

121.    In designing, manufacturing, testing, inspecting, labeling, marketing, selling, and distributing the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, and its components, Defendant, MEDTRONIC USA, INC., had a duty to users, consumers, and operators to provide products that are safe for their intended and foreseeable uses. Defendant, MEDTRONIC USA, INC., owed a duty to users with diabetes, a condition that if not appropriately managed may result in life-threatening, disabling, and/or dangerous complications, to use reasonable care in designing, manufacturing, testing, inspecting, labeling, marketing, selling, and distributing the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, and its components and in testing and inspecting any component parts made by another, so that the Paradigm Infusion Set could be safely used in a manner and for a purpose for which it was made.

122.    MEDTRONIC USA, INC., was under a duty to provide proper and adequate warning(s), safety, and familiarization to intended and/or foreseeable users of the Paradigm Infusion Set, such as Wendy Stellato, on how to use, maintain, recognize and appreciate the dangers inherent within the Paradigm Infusion Set's mechanical and internal control and the inherent risk of harm and dangers associated with the reasonably foreseeable and intended use of these components.

123.    Defendant, MEDTRONIC USA, INC., breached its duty of reasonable care owed to foreseeable and intended users of the Paradigm Infusion Set, including Wendy Stellato, by

negligently designing, manufacturing, testing, inspecting, labeling, marketing, selling, and distributing the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, when it was not in a reasonably safe condition for foreseeable or intended use, in one or more of the following ways:

    a. Designing a product that was unreasonably, dangerously, and inherently defective in design, warnings, and instructions;

    b. Failing to appropriately test and inspect the Paradigm Infusion Set to ensure that it was reasonably safe and free from defects;

    c. Failing to perform adequate testing on the Paradigm Infusion Set to determine the circumstances under which the Paradigm Infusion Set system was likely to fail, function improperly, and cause unintended, unexpected, and uncontrollable over delivery of insulin to the user of the Paradigm Infusion while being used under intended and/or reasonably foreseeable conditions or in an intended and/or reasonably foreseeable manner;

    d. Designing, manufacturing, testing, inspecting, labeling, marketing, selling, distributing, and providing warnings, or lack thereof, about the Paradigm Infusion Set in such a way that it was likely to fail even while being used in an intended and/or reasonably foreseeable manner;

    e. Failing to adequately warn foreseeable and intended users of the Paradigm Infusion Set's unintended, unexpected, and uncontrollable over delivery of insulin while being used under intended and/or reasonably foreseeable conditions or in an intended and/or reasonably foreseeable manner;

    f. Failing to devise, implement, or instruct foreseeable and intended users on the appropriate and proper safety measures in controlling, managing, and/or preventing the Paradigm Infusion Set system's failure during unintended, unexpected, and uncontrollable over delivery of insulin while being used under intended and/or reasonably foreseeable conditions or in an intended and/or reasonably foreseeable manner;

    g. Failing to design, manufacture, test, inspect, label, market, sell, and distribute the Paradigm Infusion Set to otherwise protect or prevent a foreseeable user from unexpectedly receiving unintended uncontrollable over delivery of insulin from the use of the Paradigm Infusion Set during ordinary and foreseeable use; and

    h. Failing to otherwise use reasonable care designing, manufacturing, testing, inspecting, labeling, marketing, selling, and distributing the Paradigm Infusion Set.

124.     The negligence described above directly and proximately caused Wendy Stellato's death in that they directly, and in a natural and continuous sequence, produced or contributed to her death.

125.     As a direct and proximate result of the foregoing, the Estate of WENDY STELLATO has incurred damages for loss of net accumulations and funeral expenses. Further, as a direct and proximate result of the foregoing, MICHAEL STELLATO, as surviving spouse, has sustained damages for loss of companionship and protection, mental pain and suffering in the past and future, and loss of support and services in the past and future.

**WHEREFORE,** Plaintiff, demands judgment against Defendant, MEDTRONIC USA, INC., for damages, costs, interest, and such other relief as this Court deems just, and further demands a trial by jury on all issues triable as a matter of right.

## COUNT IX– STRICT LIABILITY AGAINST MEDTRONIC, PLC

126.     Plaintiff realleges paragraphs 1—14, and 23—69, as if restated verbatim herein.

127.     MEDTRONIC, PLC, placed the defective Paradigm Infusion Set into the stream of commerce in Florida with knowledge that it would be used without inspection for defects or unknown dangers.

128.     MEDTRONIC, PLC, knew or should have known and appreciated that ultimate users, operators, or consumers would not and could not properly inspect this product for defects and dangerous conditions and that the detection of such defects or dangers would be beyond the capabilities of such ordinary persons.

129.     The Paradigm Infusion Set was defective and unreasonably dangerous to ultimate users, consumers, or operators, including Wendy Stellato, at the time it was, designed,

manufactured, tested, inspected, labeled, marketed, sold, and distributed by MEDTRONIC, PLC,

due to one or more of the following:

a.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a defective manner that the Paradigm Infusion Set was to likely to fail even while being used in an intended and/or reasonably foreseeable manner;

b.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it contained design defect(s) which were unreasonably dangerous to ultimate users, such as Wendy Stellato, who was an intended and/or reasonably foreseeable user;

c.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it did not have adequate safety components, warnings, or alerts to the user to prevent severe injury and death due to the defective condition of the Paradigm Infusion Set;

d.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it was capable of unexpectedly failing unbeknownst to the user;

e.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed with component pieces that were not safe and unreasonably dangerous for inclusion in or on the Paradigm Infusion Set;

f.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it failed to warn ultimate users, consumers, or operators, including Wendy Stellato, of the inherent danger and risk of harm associated with the Paradigm Infusion Set unexpectedly failing;

g.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that the Paradigm Infusion Set failed to perform as safely as an ordinary consumer and/or user would expect when utilizing the Paradigm Infusion Set in an intended and/or reasonably foreseeable manner;

h.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that caused the Paradigm Infusion Set to unexpectedly, inadvertently, uncontrollably over deliver continuous doses of

insulin causing a severe hypoglycemic episode that resulted in the sudden and unexpected death of Wendy Stellato;

i.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that the Paradigm Infusion Set lacked and/or contained defective warnings which rendered the Paradigm Infusion Set unreasonably and unforeseeably dangerous to persons such as Wendy Stellato, who was an intended and/or foreseeable user of the Paradigm Infusion Set; and

j.  When placed in the stream of commerce, the Paradigm Infusion Set did not have any adequate warnings of the inherent dangers and risk of harm associated with the Paradigm Infusion Set and the inherent dangers risk of harm associated with the reasonably foreseeable and intended use of the Paradigm Infusion Set.

130.  For the reasons set forth above, the Paradigm Infusion Set was grossly and unreasonably dangerous to foreseeable users at the time MEDTRONIC, PLC, released it into the stream of commerce, including Wendy Stellato, an intended user, who used the Paradigm Infusion Set in an ordinary and foreseeable manner.

131.  The defects described above directly and proximately caused Wendy Stellato's sudden and unexpected death in that they directly, and in a natural and continuous sequence, produced or contributed to her death.

132.  As a direct and proximate result of the foregoing, the Estate of WENDY STELLATO has incurred damages for loss of net accumulations and funeral expenses. Further, as a direct and proximate result of the foregoing, MICHAEL STELLATO, as surviving spouse, has sustained damages for loss of companionship and protection, mental pain and suffering in the past and future, and loss of support and services in the past and future.

**WHEREFORE**, Plaintiff, demands judgment against Defendant, MEDTRONIC, PLC, for damages, costs, interest, and such other relief as this Court deems just, and further demands a trial by jury on all issues triable as a matter of right.

## COUNT X– NEGLIGENCE AGAINST MEDTRONIC, PLC

133.    Plaintiff realleges paragraphs 1—14, and 23—69, as if restated verbatim herein.

134.    MEDTRONIC, PLC, designed, manufactured, tested, inspected, labeled, marketed, sold, and distributed the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set.

135.    In designing, manufacturing, testing, inspecting, labeling, marketing, selling, and distributing the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, and its components, Defendant, MEDTRONIC, PLC, had a duty to users, consumers, and operators to provide products that are safe for their intended and foreseeable uses. Defendant, MEDTRONIC, PLC, owed a duty to users with diabetes, a condition that if not appropriately managed may result in life-threatening, disabling, and/or dangerous complications, to use reasonable care in designing, manufacturing, testing, inspecting, labeling, marketing, selling, and distributing the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, and its components and in testing and inspecting any component parts made by another, so that the Paradigm Infusion Set could be safely used in a manner and for a purpose for which it was made.

136.    MEDTRONIC, PLC, was under a duty to provide proper and adequate warning(s), safety, and familiarization to intended and/or foreseeable users of the Paradigm Infusion Set, such as Wendy Stellato, on how to use, maintain, recognize and appreciate the dangers inherent within the Paradigm Infusion Set's mechanical and internal control and the inherent risk of harm and dangers associated with the reasonably foreseeable and intended use of these components.

137.    Defendant, MEDTRONIC, PLC, breached its duty of reasonable care owed to foreseeable and intended users of the Paradigm Infusion Set, including Wendy Stellato, by negligently designing, manufacturing, testing, inspecting, labeling, marketing, selling, and distributing the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, when it was not

in a reasonably safe condition for foreseeable or intended use, in one or more of the following ways:

    a. Designing a product that was unreasonably, dangerously, and inherently defective in design, warnings, and instructions;

    b. Failing to appropriately test and inspect the Paradigm Infusion Set to ensure that it was reasonably safe and free from defects;

    c. Failing to perform adequate testing on the Paradigm Infusion Set to determine the circumstances under which the Paradigm Infusion Set system was likely to fail, function improperly, and cause unintended, unexpected, and uncontrollable over delivery of insulin to the user of the Paradigm Infusion Set while being used under intended and/or reasonably foreseeable conditions or in an intended and/or reasonably foreseeable manner;

    d. Designing, manufacturing, testing, inspecting, labeling, marketing, selling, distributing, and providing warnings, or lack thereof, about the Paradigm Infusion Set in such a way that it was likely to fail even while being used in an intended and/or reasonably foreseeable manner;

    e. Failing to adequately warn foreseeable and intended users of the Paradigm Infusion Set's unintended, unexpected, and uncontrollable over delivery of insulin while being used under intended and/or reasonably foreseeable conditions or in an intended and/or reasonably foreseeable manner;

    f. Failing to devise, implement, or instruct foreseeable and intended users on the appropriate and proper safety measures in controlling, managing, and/or preventing the Paradigm Infusion Set system's failure during unintended, unexpected, and uncontrollable over delivery of insulin while being used under intended and/or reasonably foreseeable conditions or in an intended and/or reasonably foreseeable manner;

    g. Failing to design, manufacture, test, inspect, label, market, sell, and distribute the Paradigm Infusion Set to otherwise protect or prevent a foreseeable user from unexpectedly receiving unintended uncontrollable over delivery of insulin from the use of the Paradigm Infusion Set during ordinary and foreseeable use; and

    h. Failing to otherwise use reasonable care designing, manufacturing, testing, inspecting, labeling, marketing, selling, and distributing the Paradigm Infusion Set.

138. The negligence described above directly and proximately caused Wendy Stellato's death in that they directly, and in a natural and continuous sequence, produced or contributed to her death.

139.    As a direct and proximate result of the foregoing, the Estate of WENDY STELLATO has incurred damages for loss of net accumulations and funeral expenses. Further, as a direct and proximate result of the foregoing, MICHAEL STELLATO, as surviving spouse, has sustained damages for loss of companionship and protection, mental pain and suffering in the past and future, and loss of support and services in the past and future.

**WHEREFORE,** Plaintiff, demands judgment against Defendant, MEDTRONIC, PLC, for damages, costs, interest, and such other relief as this Court deems just, and further demands a trial by jury on all issues triable as a matter of right.

## ALLEGATIONS COMMON TO COUNTS XI—XVIII

140.    At all times material, Wendy Stellato was the permissive and foreseeable user of the Infusion Set.

141.    At all times material, Defendants, CONVATEC, INC., UNOMEDICAL, INC., UNOMEDICAL DEVICES SA de CV, and UNOMEDICAL A/S (hereinafter collectively referred to as "UNOMEDICAL"), were engaged in the business of manufacturing, assembling, testing, inspecting, labeling, marketing, selling, and distributing Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Sets within the State of Florida and more specifically in Orange County, Florida.

142.    At all times material, Defendant, UNOMEDICAL, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, within the State of Florida and more specifically in Orange County, Florida.

143.    At all times material, Defendant, UNOMEDICAL, adopted a manufacturing and assembling process for the Paradigm Infusion Set, which was not common, usual, customary,

prudent, or in accordance with the established industry standards relating to the manufacture and assembly of similar infusion sets with similar intended and/or foreseeable functions.

144.    At all times material, the Paradigm Infusion Set was manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed without consideration for warnings, and mechanical component failures resulting in unintended, unexpected, undetected, and uncontrolled continuous over delivery of insulin to the user through the Paradigm Infusion Set despite it being used under intended and/or reasonably foreseeable conditions or in an intended and/or reasonably foreseeable manner and the user being of the impression that the pump and Paradigm Infusion Set are operating normally.

145.    At all times material, Defendant, UNOMEDICAL failed to perform adequate testing to determine the circumstances under which the Paradigm Infusion Set was likely to fail, function improperly, inadvertently and uncontrollably over deliver continuous doses of insulin to the user resulting in severe hypoglycemic episodes while being used under intended and/or reasonably foreseeable conditions or in an intended and/or reasonably foreseeable manner.

146.    At all times material, Defendant, UNOMEDICAL, manufactured, assembled, tested, inspected, labeled, marketed, sold, distributed, and placed the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, into the stream of commerce intending that it be used in the precise manner that it was being used by Wendy Stellato, which proximately caused and resulted in her sudden and unexpected death.

147.    At no time material hereto was the Paradigm Infusion Set subjected to any unintended and/or unforeseeable conditions.

148.    On November 17, 2017, the Paradigm Infusion Set was in substantially the same defective condition at the time of Wendy Stellato's death, as it was when it left Defendant, UNOMEDICAL's possession or control.

149.    Defendant, UNOMEDICAL owed a duty to users with diabetes, a condition that if not appropriately managed may result in life-threatening, disabling, and/or dangerous complications, to use reasonable care in manufacturing, assembling, testing, inspecting, labeling, marketing, selling, and distributing the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, and its components and in testing and inspecting any component parts made by another, so that the Paradigm Infusion Set could be safely used in a manner and for a purpose for which it was made.

150.    Defendant, UNOMEDICAL owed a duty to users with diabetes, to provide adequate warning(s) to intended and/or foreseeable users of the Paradigm Infusion Set, such as Wendy Stellato, on how to use, maintain, recognize and appreciate the dangers inherent within the Paradigm Infusion Set's mechanical and internal control and the inherent risk of harm and dangers associated with the reasonably foreseeable and intended use of these components.

151.    Defendant, UNOMEDICAL breached such duties by manufacturing, assembling, testing, inspecting, labeling, marketing, selling, distributing, and providing warnings of the danger, or lack thereof, about the Paradigm Infusion Set in such a negligent manner that it was likely to fail even while being used in an intended and/or reasonably foreseeable manner.

152.    The negligent manner in which the Paradigm Infusion Set was manufactured, assembled, tested, inspected, labeled, marketed, sold, distributed, and the warnings, or lack thereof, which were given to users such as Wendy Stellato, was the proximate cause of the infusion system

failure described above which caused the Paradigm Infusion Set to uncontrollably over deliver continuous doses of insulin thereby resulting in Wendy Stellato's sudden and unexpected death.

## COUNT XI– STRICT LIABILITY AGAINST CONVATEC, INC.

153.    Plaintiff realleges paragraphs 1—4, 15—56, and 140—152, as if restated verbatim herein.

154.    CONVATEC, INC., placed the defective Paradigm Infusion Set into the stream of commerce in Florida with knowledge that it would be used without inspection for defects or unknown dangers.

155.    CONVATEC, INC., knew or should have known and appreciated that ultimate users, operators, or consumers would not and could not properly inspect this product for defects and dangerous conditions and that the detection of such defects or dangers would be beyond the capabilities of such ordinary persons.

156.    The Paradigm Infusion Set was defective and unreasonably dangerous to ultimate users, consumers, or operators, including Wendy Stellato, at the time it was, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed by CONVATEC, INC., due to one or more of the following:

    a.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a defective manner that the Paradigm Infusion Set was to likely to fail even while being used in an intended and/or reasonably foreseeable manner;

    b.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it contained design defect(s) which were unreasonably dangerous to ultimate users, such as Wendy Stellato, who was an intended and/or reasonably foreseeable user;

    c.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it did not have adequate safety

components, warnings, or alerts to the user to prevent severe injury and death due to the defective condition of the Paradigm Infusion Set;

d. When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it was capable of unexpectedly failing unbeknownst to the user;

e. When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed with component pieces that were not safe and unreasonably dangerous for inclusion in or on the Paradigm Infusion Set;

f. When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it failed to warn ultimate users, consumers, or operators, including Wendy Stellato, of the inherent danger and risk of harm associated with the Paradigm Infusion Set unexpectedly failing;

g. When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that the Paradigm Infusion Set failed to perform as safely as an ordinary consumer and/or user would expect when utilizing the Paradigm Infusion Set in an intended and/or reasonably foreseeable manner;

h. When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that caused the Paradigm Infusion Set to unexpectedly, inadvertently, uncontrollably over deliver continuous doses of insulin causing a severe hypoglycemic episode that resulted in the sudden and unexpected death of Wendy Stellato;

i. When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that the Paradigm Infusion Set lacked and/or contained defective warnings which rendered the Paradigm Infusion Set unreasonably and unforeseeably dangerous to persons such as Wendy Stellato, who was an intended and/or foreseeable user of the Paradigm Infusion Set; and

j. When placed in the stream of commerce, the Paradigm Infusion Set did not have any adequate warnings of the inherent dangers and risk of harm associated with the Paradigm Infusion Set and the inherent dangers risk of harm associated with the reasonably foreseeable and intended use of the Paradigm Infusion Set.

157. For the reasons set forth above, the Paradigm Infusion Set was grossly and unreasonably dangerous to foreseeable users at the time CONVATEC, INC., released it into the

stream of commerce, including Wendy Stellato, an intended user, who used the Paradigm Infusion Set in an ordinary and foreseeable manner.

158.    The defects described above directly and proximately caused Wendy Stellato's sudden and unexpected death in that they directly, and in a natural and continuous sequence, produced or contributed to her death.

159.    As a direct and proximate result of the foregoing, the Estate of WENDY STELLATO has incurred damages for loss of net accumulations and funeral expenses. Further, as a direct and proximate result of the foregoing, MICHAEL STELLATO, as surviving spouse, has sustained damages for loss of companionship and protection, mental pain and suffering in the past and future, and loss of support and services in the past and future.

**WHEREFORE**, Plaintiff, demands judgment against Defendant, CONVATEC, INC., for damages, costs, interest, and such other relief as this Court deems just, and further demands a trial by jury on all issues triable as a matter of right.

## Count XII– Negligence Against ConvaTec, Inc.

160.    Plaintiff realleges paragraphs 1—4, 15—56, and 140—152, as if restated verbatim herein.

161.    CONVATEC, INC., manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set.

162.    In manufacturing, assembling, testing, inspecting, labeling, marketing, selling, and distributing the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, and its components, Defendant, CONVATEC, INC., had a duty to users, consumers, and operators to provide products that are safe for their intended and foreseeable uses. Defendant, CONVATEC,

INC., owed a duty to users with diabetes, a condition that if not appropriately managed may result in life-threatening, disabling, and/or dangerous complications, to use reasonable care in manufacturing, assembling, testing, inspecting, labeling, marketing, selling, and distributing the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, and its components and in testing and inspecting any component parts made by another, so that the Paradigm Infusion Set could be safely used in a manner and for a purpose for which it was made.

163.     CONVATEC, INC., was under a duty to provide proper and adequate warning(s), safety, and familiarization to intended and/or foreseeable users of the Paradigm Infusion Set, such as Wendy Stellato, on how to use, maintain, recognize and appreciate the dangers inherent within the Paradigm Infusion Set's mechanical and internal control and the inherent risk of harm and dangers associated with the reasonably foreseeable and intended use of these components.

164.     Defendant, CONVATEC, INC., breached its duty of reasonable care owed to foreseeable and intended users of the Paradigm Infusion Set, including Wendy Stellato, by negligently, manufacturing, assembling, testing, inspecting, labeling, marketing, selling, and distributing the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, when it was not in a reasonably safe condition for foreseeable or intended use, in one or more of the following ways:

    a.  Manufacturing and assembling a product that was unreasonably, dangerously, and inherently defective in design, warnings, and instructions;

    b.  Failing to appropriately test and inspect the Paradigm Infusion Set to ensure that it was reasonably safe and free from defects;

    c.  Failing to perform adequate testing on the Paradigm Infusion Set to determine the circumstances under which the Paradigm Infusion Set system was likely to fail, function improperly, and cause unintended, unexpected, and uncontrollable over delivery of insulin to the user of the Paradigm Infusion Set while being used under intended and/or reasonably foreseeable conditions or in an intended and/or reasonably foreseeable manner;

    d.   Manufacturing, assembling, testing, inspecting, labeling, marketing, selling, distributing, and providing warnings, or lack thereof, about the Paradigm Infusion Set in such a way that it was likely to fail even while being used in an intended and/or reasonably foreseeable manner;

    e.   Failing to adequately warn foreseeable and intended users of the Paradigm Infusion Set's unintended, unexpected, and uncontrollable over delivery of insulin while being used under intended and/or reasonably foreseeable conditions or in an intended and/or reasonably foreseeable manner;

    f.   Failing to devise, implement, or instruct foreseeable and intended users on the appropriate and proper safety measures in controlling, managing, and/or preventing the Paradigm Infusion Set system's failure during unintended, unexpected, and uncontrollable over delivery of insulin while being used under intended and/or reasonably foreseeable conditions or in an intended and/or reasonably foreseeable manner;

    g.   Failing to manufacture, assemble, test, inspect, label, market, sell, and distribute the Paradigm Infusion Set to otherwise protect or prevent a foreseeable user from unexpectedly receiving unintended uncontrollable over delivery of insulin from the use of the Paradigm Infusion Set during ordinary and foreseeable use; and

    h.   Failing to otherwise use reasonable care, manufacturing, assembling, testing, inspecting, labeling, marketing, selling, and distributing the Paradigm Infusion Set.

165.    The negligence described above directly and proximately caused Wendy Stellato's death in that they directly, and in a natural and continuous sequence, produced or contributed to her death.

166.    As a direct and proximate result of the foregoing, the Estate of WENDY STELLATO has incurred damages for loss of net accumulations and funeral expenses. Further, as a direct and proximate result of the foregoing, MICHAEL STELLATO, as surviving spouse, has sustained damages for loss of companionship and protection, mental pain and suffering in the past and future, and loss of support and services in the past and future.

**WHEREFORE,** Plaintiff, demands judgment against Defendant, CONVATEC, INC., for damages, costs, interest, and such other relief as this Court deems just, and further demands a trial by jury on all issues triable as a matter of right.

## COUNT XIII– STRICT LIABILITY AGAINST UNOMEDICAL, INC.

167.    Plaintiff realleges paragraphs 1—4, 15—56, and 140—152, as if restated verbatim herein.

168.    UNOMEDICAL, INC., placed the defective Paradigm Infusion Set into the stream of commerce in Florida with knowledge that it would be used without inspection for defects or unknown dangers.

169.    UNOMEDICAL, INC., knew or should have known and appreciated that ultimate users, operators, or consumers would not and could not properly inspect this product for defects and dangerous conditions and that the detection of such defects or dangers would be beyond the capabilities of such ordinary persons.

170.    The Paradigm Infusion Set was defective and unreasonably dangerous to ultimate users, consumers, or operators, including Wendy Stellato, at the time it was, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed by UNOMEDICAL, INC., due to one or more of the following:

> a.    When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a defective manner that the Paradigm Infusion Set was to likely to fail even while being used in an intended and/or reasonably foreseeable manner;
>
> b.    When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it contained design defect(s) which were unreasonably dangerous to ultimate users, such as Wendy Stellato, who was an intended and/or reasonably foreseeable user;
>
> c.    When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it did not have adequate safety components, warnings, or alerts to the user to prevent severe injury and death due to the defective condition of the Paradigm Infusion Set;
>
> d.    When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold,

and distributed in such a manner that it was capable of unexpectedly failing unbeknownst to the user;

e. When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed with component pieces that were not safe and unreasonably dangerous for inclusion in or on the Paradigm Infusion Set;

f. When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it failed to warn ultimate users, consumers, or operators, including Wendy Stellato, of the inherent danger and risk of harm associated with the Paradigm Infusion Set unexpectedly failing;

g. When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that the Paradigm Infusion Set failed to perform as safely as an ordinary consumer and/or user would expect when utilizing the Paradigm Infusion Set in an intended and/or reasonably foreseeable manner;

h. When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that caused the Paradigm Infusion Set to unexpectedly, inadvertently, uncontrollably over deliver continuous doses of insulin causing a severe hypoglycemic episode that resulted in the sudden and unexpected death of Wendy Stellato;

i. When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that the Paradigm Infusion Set lacked and/or contained defective warnings which rendered the Paradigm Infusion Set unreasonably and unforeseeably dangerous to persons such as Wendy Stellato, who was an intended and/or foreseeable user of the Paradigm Infusion Set; and

j. When placed in the stream of commerce, the Paradigm Infusion Set did not have any adequate warnings of the inherent dangers and risk of harm associated with the Paradigm Infusion Set and the inherent dangers risk of harm associated with the reasonably foreseeable and intended use of the Paradigm Infusion Set.

171. For the reasons set forth above, the Paradigm Infusion Set was grossly and unreasonably dangerous to foreseeable users at the time UNOMEDICAL, INC., released it into the stream of commerce, including Wendy Stellato, an intended user, who used the Paradigm Infusion Set in an ordinary and foreseeable manner.

172.   The defects described above directly and proximately caused Wendy Stellato's sudden and unexpected death in that they directly, and in a natural and continuous sequence, produced or contributed to her death.

173.   As a direct and proximate result of the foregoing, the Estate of WENDY STELLATO has incurred damages for loss of net accumulations and funeral expenses. Further, as a direct and proximate result of the foregoing, MICHAEL STELLATO, as surviving spouse, has sustained damages for loss of companionship and protection, mental pain and suffering in the past and future, and loss of support and services in the past and future.

**WHEREFORE**, Plaintiff, demands judgment against Defendant, UNOMEDICAL, INC., for damages, costs, interest, and such other relief as this Court deems just, and further demands a trial by jury on all issues triable as a matter of right.

## COUNT XIV– NEGLIGENCE AGAINST UNOMEDICAL, INC.

174.   Plaintiff realleges paragraphs 1—4, 15—56 and 140—152, as if restated verbatim herein.

175.   UNOMEDICAL, INC., manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set.

176.   In manufacturing, assembling, testing, inspecting, labeling, marketing, selling, and distributing the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, and its components, Defendant, UNOMEDICAL, INC., had a duty to users, consumers, and operators to provide products that are safe for their intended and foreseeable uses. Defendant, UNOMEDICAL, INC., owed a duty to users with diabetes, a condition that if not appropriately managed may result in life-threatening, disabling, and/or dangerous complications, to use reasonable care in

manufacturing, assembling, testing, inspecting, labeling, marketing, selling, and distributing the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, and its components and in testing and inspecting any component parts made by another, so that the Paradigm Infusion Set could be safely used in a manner and for a purpose for which it was made.

177. UNOMEDICAL, INC., was under a duty to provide proper and adequate warning(s), safety, and familiarization to intended and/or foreseeable users of the Paradigm Infusion Set, such as Wendy Stellato, on how to use, maintain, recognize and appreciate the dangers inherent within the Paradigm Infusion Set's mechanical and internal control and the inherent risk of harm and dangers associated with the reasonably foreseeable and intended use of these components.

178. Defendant, UNOMEDICAL, INC., breached its duty of reasonable care owed to foreseeable and intended users of the Paradigm Infusion Set, including Wendy Stellato, by negligently, manufacturing, assembling, testing, inspecting, labeling, marketing, selling, and distributing the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, when it was not in a reasonably safe condition for foreseeable or intended use, in one or more of the following ways:

   a. Manufacturing and assembling a product that was unreasonably, dangerously, and inherently defective in design, warnings, and instructions;

   b. Failing to appropriately test and inspect the Paradigm Infusion Set to ensure that it was reasonably safe and free from defects;

   c. Failing to perform adequate testing on the Paradigm Infusion Set to determine the circumstances under which the Paradigm Infusion Set system was likely to fail, function improperly, and cause unintended, unexpected, and uncontrollable over delivery of insulin to the user of the Paradigm Infusion Set while being used under intended and/or reasonably foreseeable conditions or in an intended and/or reasonably foreseeable manner;

   d. Manufacturing, assembling, testing, inspecting, labeling, marketing, selling, distributing, and providing warnings, or lack thereof, about the Paradigm

Infusion Set in such a way that it was likely to fail even while being used in an intended and/or reasonably foreseeable manner;

e.  Failing to adequately warn foreseeable and intended users of the Paradigm Infusion Set's unintended, unexpected, and uncontrollable over delivery of insulin while being used under intended and/or reasonably foreseeable conditions or in an intended and/or reasonably foreseeable manner;

f.  Failing to devise, implement, or instruct foreseeable and intended users on the appropriate and proper safety measures in controlling, managing, and/or preventing the Paradigm Infusion Set system's failure during unintended, unexpected, and uncontrollable over delivery of insulin while being used under intended and/or reasonably foreseeable conditions or in an intended and/or reasonably foreseeable manner;

g.  Failing to manufacture, assemble, test, inspect, label, market, sell, and distribute the Paradigm Infusion Set to otherwise protect or prevent a foreseeable user from unexpectedly receiving unintended uncontrollable over delivery of insulin from the use of the Paradigm Infusion Set during ordinary and foreseeable use; and

h.  Failing to otherwise use reasonable care, manufacturing, assembling, testing, inspecting, labeling, marketing, selling, and distributing the Paradigm Infusion Set.

179.  The negligence described above directly and proximately caused Wendy Stellato's death in that they directly, and in a natural and continuous sequence, produced or contributed to her death.

180.  As a direct and proximate result of the foregoing, the Estate of WENDY STELLATO has incurred damages for loss of net accumulations and funeral expenses. Further, as a direct and proximate result of the foregoing, MICHAEL STELLATO, as surviving spouse, has sustained damages for loss of companionship and protection, mental pain and suffering in the past and future, and loss of support and services in the past and future.

**WHEREFORE,** Plaintiff, demands judgment against Defendant, UNOMEDICAL, INC., for damages, costs, interest, and such other relief as this Court deems just, and further demands a trial by jury on all issues triable as a matter of right.

## COUNT XV– STRICT LIABILITY AGAINST
## UNOMEDICAL SERVICES SA DE CV

181.    Plaintiff realleges paragraphs 1—4, 15—56, and 140—152, as if restated verbatim herein.

182.    UNOMEDICAL SERVICES SA de CV, placed the defective Paradigm Infusion Set into the stream of commerce in Florida with knowledge that it would be used without inspection for defects or unknown dangers.

183.    UNOMEDICAL SERVICES SA de CV, knew or should have known and appreciated that ultimate users, operators, or consumers would not and could not properly inspect this product for defects and dangerous conditions and that the detection of such defects or dangers would be beyond the capabilities of such ordinary persons.

184.    The Paradigm Infusion Set was defective and unreasonably dangerous to ultimate users, consumers, or operators, including Wendy Stellato, at the time it was, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed by UNOMEDICAL SERVICES SA de CV, due to one or more of the following:

  a.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a defective manner that the Paradigm Infusion Set was to likely to fail even while being used in an intended and/or reasonably foreseeable manner;

  b.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it contained design defect(s) which were unreasonably dangerous to ultimate users, such as Wendy Stellato, who was an intended and/or reasonably foreseeable user;

  c.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it did not have adequate safety components, warnings, or alerts to the user to prevent severe injury and death due to the defective condition of the Paradigm Infusion Set;

d.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it was capable of unexpectedly failing unbeknownst to the user;

e.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed with component pieces that were not safe and unreasonably dangerous for inclusion in or on the Paradigm Infusion Set;

f.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it failed to warn ultimate users, consumers, or operators, including Wendy Stellato, of the inherent danger and risk of harm associated with the Paradigm Infusion Set unexpectedly failing;

g.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that the Paradigm Infusion Set failed to perform as safely as an ordinary consumer and/or user would expect when utilizing the Paradigm Infusion Set in an intended and/or reasonably foreseeable manner;

h.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that caused the Paradigm Infusion Set to unexpectedly, inadvertently, uncontrollably over deliver continuous doses of insulin causing a severe hypoglycemic episode that resulted in the sudden and unexpected death of Wendy Stellato;

i.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that the Paradigm Infusion Set lacked and/or contained defective warnings which rendered the Paradigm Infusion Set unreasonably and unforeseeably dangerous to persons such as Wendy Stellato, who was an intended and/or foreseeable user of the Paradigm Infusion Set; and

j.  When placed in the stream of commerce, the Paradigm Infusion Set did not have any adequate warnings of the inherent dangers and risk of harm associated with the Paradigm Infusion Set and the inherent dangers risk of harm associated with the reasonably foreseeable and intended use of the Paradigm Infusion Set.

185.    For the reasons set forth above, the Paradigm Infusion Set was grossly and unreasonably dangerous to foreseeable users at the time UNOMEDICAL SERVICES SA de CV, released it into the stream of commerce, including Wendy Stellato, an intended user, who used the Paradigm Infusion Set in an ordinary and foreseeable manner.

186.     The defects described above directly and proximately caused Wendy Stellato's sudden and unexpected death in that they directly, and in a natural and continuous sequence, produced or contributed to her death.

187.     As a direct and proximate result of the foregoing, the Estate of WENDY STELLATO has incurred damages for loss of net accumulations and funeral expenses. Further, as a direct and proximate result of the foregoing, MICHAEL STELLATO, as surviving spouse, has sustained damages for loss of companionship and protection, mental pain and suffering in the past and future, and loss of support and services in the past and future.

**WHEREFORE**, Plaintiff, demands judgment against Defendant, UNOMEDICAL SERVICES SA de CV, for damages, costs, interest, and such other relief as this Court deems just, and further demands a trial by jury on all issues triable as a matter of right.

## COUNT XVI– NEGLIGENCE AGAINST UNOMEDICAL SERVICES SA DE CV

188.     Plaintiff realleges paragraphs 1—4, 15—56, and 140—152, as if restated verbatim herein.

189.     UNOMEDICAL SERVICES SA de CV, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set.

190.     In manufacturing, assembling, testing, inspecting, labeling, marketing, selling, and distributing the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, and its components, Defendant, UNOMEDICAL SERVICES SA de CV, had a duty to users, consumers, and operators to provide products that are safe for their intended and foreseeable uses. Defendant, UNOMEDICAL SERVICES SA de CV, owed a duty to users with diabetes, a condition that if not appropriately managed may result in life-threatening, disabling, and/or dangerous complications,

to use reasonable care in manufacturing, assembling, testing, inspecting, labeling, marketing, selling, and distributing the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, and its components and in testing and inspecting any component parts made by another, so that the Paradigm Infusion Set could be safely used in a manner and for a purpose for which it was made.

191.    UNOMEDICAL SERVICES SA de CV, was under a duty to provide proper and adequate warning(s), safety, and familiarization to intended and/or foreseeable users of the Paradigm Infusion Set, such as Wendy Stellato, on how to use, maintain, recognize and appreciate the dangers inherent within the Paradigm Infusion Set's mechanical and internal control and the inherent risk of harm and dangers associated with the reasonably foreseeable and intended use of these components.

192.    Defendant UNOMEDICAL SERVICES SA de CV, breached its duty of reasonable care owed to foreseeable and intended users of the Paradigm Infusion Set, including Wendy Stellato, by negligently, manufacturing, assembling, testing, inspecting, labeling, marketing, selling, and distributing the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, when it was not in a reasonably safe condition for foreseeable or intended use, in one or more of the following ways:

    a.  Manufacturing and assembling a product that was unreasonably, dangerously, and inherently defective in design, warnings, and instructions;

    b.  Failing to appropriately test and inspect the Paradigm Infusion Set to ensure that it was reasonably safe and free from defects;

    c.  Failing to perform adequate testing on the Paradigm Infusion Set to determine the circumstances under which the Paradigm Infusion Set system was likely to fail, function improperly, and cause unintended, unexpected, and uncontrollable over delivery of insulin to the user of the Paradigm Infusion Set while being used under intended and/or reasonably foreseeable conditions or in an intended and/or reasonably foreseeable manner;

    d.  Manufacturing, assembling, testing, inspecting, labeling, marketing, selling, distributing, and providing warnings, or lack thereof, about the Paradigm

Infusion Set in such a way that it was likely to fail even while being used in an intended and/or reasonably foreseeable manner;

e. Failing to adequately warn foreseeable and intended users of the Paradigm Infusion Set's unintended, unexpected, and uncontrollable over delivery of insulin while being used under intended and/or reasonably foreseeable conditions or in an intended and/or reasonably foreseeable manner;

f. Failing to devise, implement, or instruct foreseeable and intended users on the appropriate and proper safety measures in controlling, managing, and/or preventing the Paradigm Infusion Set system's failure during unintended, unexpected, and uncontrollable over delivery of insulin while being used under intended and/or reasonably foreseeable conditions or in an intended and/or reasonably foreseeable manner;

g. Failing to manufacture, assemble, test, inspect, label, market, sell, and distribute the Paradigm Infusion Set to otherwise protect or prevent a foreseeable user from unexpectedly receiving unintended uncontrollable over delivery of insulin from the use of the Paradigm Infusion Set during ordinary and foreseeable use; and

h. Failing to otherwise use reasonable care, manufacturing, assembling, testing, inspecting, labeling, marketing, selling, and distributing the Paradigm Infusion Set.

193.    The negligence described above directly and proximately caused Wendy Stellato's death in that they directly, and in a natural and continuous sequence, produced or contributed to her death.

194.    As a direct and proximate result of the foregoing, the Estate of WENDY STELLATO has incurred damages for loss of net accumulations and funeral expenses. Further, as a direct and proximate result of the foregoing, MICHAEL STELLATO, as surviving spouse, has sustained damages for loss of companionship and protection, mental pain and suffering in the past and future, and loss of support and services in the past and future.

**WHEREFORE,** Plaintiff, demands judgment against Defendant, UNOMEDICAL SERVICES SA de CV, for damages, costs, interest, and such other relief as this Court deems just, and further demands a trial by jury on all issues triable as a matter of right.

## COUNT XVII– STRICT LIABILITY AGAINST UNOMEDICAL A/S

195.    Plaintiff realleges paragraphs 1—4, 15—56, and 140—152, as if restated verbatim herein.

196.    UNOMEDICAL A/S, placed the defective Paradigm Infusion Set into the stream of commerce in Florida with knowledge that it would be used without inspection for defects or unknown dangers.

197.    UNOMEDICAL A/S, knew or should have known and appreciated that ultimate users, operators, or consumers would not and could not properly inspect this product for defects and dangerous conditions and that the detection of such defects or dangers would be beyond the capabilities of such ordinary persons.

198.    The Paradigm Infusion Set was defective and unreasonably dangerous to ultimate users, consumers, or operators, including Wendy Stellato, at the time it was, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed by UNOMEDICAL A/S, due to one or more of the following:

   a.   When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a defective manner that the Paradigm Infusion Set was to likely to fail even while being used in an intended and/or reasonably foreseeable manner;

   b.   When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it contained design defect(s) which were unreasonably dangerous to ultimate users, such as Wendy Stellato, who was an intended and/or reasonably foreseeable user;

   c.   When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it did not have adequate safety components, warnings, or alerts to the user to prevent severe injury and death due to the defective condition of the Paradigm Infusion Set;

   d.   When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold,

and distributed in such a manner that it was capable of unexpectedly failing unbeknownst to the user;

e.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed with component pieces that were not safe and unreasonably dangerous for inclusion in or on the Paradigm Infusion Set;

f.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that it failed to warn ultimate users, consumers, or operators, including Wendy Stellato, of the inherent danger and risk of harm associated with the Paradigm Infusion Set unexpectedly failing;

g.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that the Paradigm Infusion Set failed to perform as safely as an ordinary consumer and/or user would expect when utilizing the Paradigm Infusion Set in an intended and/or reasonably foreseeable manner;

h.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that caused the Paradigm Infusion Set to unexpectedly, inadvertently, uncontrollably over deliver continuous doses of insulin causing a severe hypoglycemic episode that resulted in the sudden and unexpected death of Wendy Stellato;

i.  When placed in the stream of commerce, the Paradigm Infusion Set was designed, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed in such a manner that the Paradigm Infusion Set lacked and/or contained defective warnings which rendered the Paradigm Infusion Set unreasonably and unforeseeably dangerous to persons such as Wendy Stellato, who was an intended and/or foreseeable user of the Paradigm Infusion Set; and

j.  When placed in the stream of commerce, the Paradigm Infusion Set did not have any adequate warnings of the inherent dangers and risk of harm associated with the Paradigm Infusion Set and the inherent dangers risk of harm associated with the reasonably foreseeable and intended use of the Paradigm Infusion Set.

199.  For the reasons set forth above, the Paradigm Infusion Set was grossly and unreasonably dangerous to foreseeable users at the time UNOMEDICAL A/S, released it into the stream of commerce, including Wendy Stellato, an intended user, who used the Paradigm Infusion Set in an ordinary and foreseeable manner.

200. The defects described above directly and proximately caused Wendy Stellato's sudden and unexpected death in that they directly, and in a natural and continuous sequence, produced or contributed to her death.

201. As a direct and proximate result of the foregoing, the Estate of WENDY STELLATO has incurred damages for loss of net accumulations and funeral expenses. Further, as a direct and proximate result of the foregoing, MICHAEL STELLATO, as surviving spouse, has sustained damages for loss of companionship and protection, mental pain and suffering in the past and future, and loss of support and services in the past and future.

**WHEREFORE**, Plaintiff, demands judgment against Defendant, UNOMEDICAL A/S, for damages, costs, interest, and such other relief as this Court deems just, and further demands a trial by jury on all issues triable as a matter of right.

## COUNT XVIII– NEGLIGENCE AGAINST UNOMEDICAL A/S

202. Plaintiff realleges paragraphs 1—4, 15—56, and 140—152, as if restated verbatim herein.

203. UNOMEDICAL A/S, manufactured, assembled, tested, inspected, labeled, marketed, sold, and distributed the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set.

204. In manufacturing, assembling, testing, inspecting, labeling, marketing, selling, and distributing the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, and its components, Defendant, UNOMEDICAL A/S, had a duty to users, consumers, and operators to provide products that are safe for their intended and foreseeable uses. Defendant, UNOMEDICAL A/S, owed a duty to users with diabetes, a condition that if not appropriately managed may result in life-threatening, disabling, and/or dangerous complications, to use reasonable care in

manufacturing, assembling, testing, inspecting, labeling, marketing, selling, and distributing the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, and its components and in testing and inspecting any component parts made by another, so that the Paradigm Infusion Set could be safely used in a manner and for a purpose for which it was made.

205.    UNOMEDICAL A/S, was under a duty to provide proper and adequate warning(s), safety, and familiarization to intended and/or foreseeable users of the Paradigm Infusion Set, such as Wendy Stellato, on how to use, maintain, recognize and appreciate the dangers inherent within the Paradigm Infusion Set's mechanical and internal control and the inherent risk of harm and dangers associated with the reasonably foreseeable and intended use of these components.

206.    Defendant UNOMEDICAL A/S, breached its duty of reasonable care owed to foreseeable and intended users of the Paradigm Infusion Set, including Wendy Stellato, by negligently, manufacturing, assembling, testing, inspecting, labeling, marketing, selling, and distributing the Medtronic MiniMed MMT-397 Quick-Set Paradigm Infusion Set, when it was not in a reasonably safe condition for foreseeable or intended use, in one or more of the following ways:

    a.  Manufacturing and assembling a product that was unreasonably, dangerously, and inherently defective in design, warnings, and instructions;

    b.  Failing to appropriately test and inspect the Paradigm Infusion Set to ensure that it was reasonably safe and free from defects;

    c.  Failing to perform adequate testing on the Paradigm Infusion Set to determine the circumstances under which the Paradigm Infusion Set system was likely to fail, function improperly, and cause unintended, unexpected, and uncontrollable over delivery of insulin to the user of the Paradigm Infusion Set while being used under intended and/or reasonably foreseeable conditions or in an intended and/or reasonably foreseeable manner;

    d.  Manufacturing, assembling, testing, inspecting, labeling, marketing, selling, distributing, and providing warnings, or lack thereof, about the Paradigm Infusion Set in such a way that it was likely to fail even while being used in an intended and/or reasonably foreseeable manner;

e. Failing to adequately warn foreseeable and intended users of the Paradigm Infusion Set's unintended, unexpected, and uncontrollable over delivery of insulin while being used under intended and/or reasonably foreseeable conditions or in an intended and/or reasonably foreseeable manner;

f. Failing to devise, implement, or instruct foreseeable and intended users on the appropriate and proper safety measures in controlling, managing, and/or preventing the Paradigm Infusion Set system's failure during unintended, unexpected, and uncontrollable over delivery of insulin while being used under intended and/or reasonably foreseeable conditions or in an intended and/or reasonably foreseeable manner;

g. Failing to manufacture, assemble, test, inspect, label, market, sell, and distribute the Paradigm Infusion Set to otherwise protect or prevent a foreseeable user from unexpectedly receiving unintended uncontrollable over delivery of insulin from the use of the Paradigm Infusion Set during ordinary and foreseeable use; and

h. Failing to otherwise use reasonable care, manufacturing, assembling, testing, inspecting, labeling, marketing, selling, and distributing the Paradigm Infusion Set.

207.    The negligence described above directly and proximately caused Wendy Stellato's death in that they directly, and in a natural and continuous sequence, produced or contributed to her death.

208.    As a direct and proximate result of the foregoing, the Estate of WENDY STELLATO has incurred damages for loss of net accumulations and funeral expenses. Further, as a direct and proximate result of the foregoing, MICHAEL STELLATO, as surviving spouse, has sustained damages for loss of companionship and protection, mental pain and suffering in the past and future, and loss of support and services in the past and future.

**WHEREFORE,** Plaintiff, demands judgment against Defendant, UNOMEDICAL A/S, for damages, costs, interest, and such other relief as this Court deems just, and further demands a trial by jury on all issues triable as a matter of right.

## JURY DEMAND

Plaintiff, MICHAEL STELLATO as Personal Representative of the Estate of WENDY STELLATO, hereby demands a jury trial on all issues so triable.

**WHEREFORE**, Plaintiff, MICHAEL STELLATO as Personal Representative of the Estate of WENDY STELLATO, hereby demands judgment for damages against Defendants, MEDTRONIC, INC., MEDTRONIC MINIMED, INC., MINIMED DISTRIBUTION CORP., MEDTRONIC USA, MEDTRONIC, PLC, CONVATEC, INC., UNOMEDICAL, INC., UNOMEDICAL DEVICES SA de CV, and UNOMEDICAL A/S and furthermore, demand trial by jury of all issues so triable.

Dated this 14th day of November 2019.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 14, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that the foregoing document will be furnished to the above named Defendants via service of process.

*/s/David A. Paul*

**DAVID A. PAUL, ESQ.**
FBN: 021385
**BRENT R. BIGGER ESQ.**
FBN: 823961
**CHRISTOPHER J. BILECKI, ESQ.**
FBN: 58229
**PAUL | KNOPF | BIGGER**
840 South Denning Drive, Suite 200
Winter Park, Florida 32789
Phone: (407) 622-2111
Fax: (407) 622-2112
dave@pkblawfirm.com
brent@pkblawfirm.com
chris@pkblawfirm.com
abla@pkblawfirm.com
kim@pkblawfirm.com
*Attorneys for Plaintiff*